HART TWIN VOLVO CORPORATION *v.* COMMISSIONER OF MOTOR VEHICLES

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, Js.

Argued April 5—decided May 23, 1973

*Morton W. Appleton,* with whom was *Sydney W. Elkin,* for the appellant (plaintiff).

*Richard R. Brown,* assistant attorney general, with whom, on the brief, was *Robert K. Killian,* attorney general, for the appellee (defendant).

BOGDANSKI, J.  This is an appeal from the decision of the defendant commissioner of motor vehicles in finding that the plaintiff violated § 14-51 of the

General Statutes regarding the qualifications of a new car dealer and in finding that the plaintiff violated § 14-63-2 (f) of the regulations of the Connecticut motor vehicle department in not having sufficient personnel and equipment to service a customer's car. The commissioner, pursuant to § 14-64, suspended the plaintiff's license for five days for each violation, to run consecutively. From this decision the plaintiff appealed to the Court of Common Pleas, which dismissed the appeal. From the judgment rendered thereon, the plaintiff appealed to this court.

In its assignment of errors, the plaintiff claims that the court erred in failing to find that the decision reached by the commissioner was illegal, arbitrary and unsupported by the evidence.

Section 14-51 of the General Statutes reads in part: "A 'new car dealer' includes any person, firm or corporation engaged in the business of merchandising new motor vehicles under a manufacturer's or importer's contract for each such make of vehicle who may, incidental to such business, sell used motor vehicles and repair motor vehicles or cause them to be repaired by qualified persons in his employ. *He shall be a person qualified to conduct such business and have a suitable and adequate place of business* [emphasis added], which shall be determined to be such by the commissioner."

The notice of the charge made against the plaintiff with respect to the violation of § 14-51 reads as follows: "It is alleged you are no longer qualified to be licensed as a dealer in that you did conspire to defraud Mr. Tait out of the guarantee that was part of the sale of the 1967 Ford Country Squire. It is alleged you instructed R & R Atlantic Service,

Inc., the approximate price to assess Mr. Tait for the replacement of the rear engine seal. It is further alleged that you did not expect R & R Atlantic to charge Hart Twin Volvo $66.50 for the replacement of the seal on Mr. Tait's vehicle."

Pursuant to the provisions of § 14-64 the commissioner held a hearing and found the plaintiff in violation of § 14-51, stating as follows: "A violation of Section 14-51, regarding qualifications of a new car dealer, is found in that you represented the 1967 Ford you sold to Mr. Tait to be under a 100% guarantee, yet reduced this to a 50/50 guarantee without Mr. Tait's knowledge."

With respect to this charge and the finding made, the plaintiff contends that it was misled by the notice and asserts that it was prepared to defend a charge of conspiracy to defraud in the repair of a car, but instead was found in violation of reducing a guarantee at the time of the sale of the car, a charge it was not prepared to defend based upon the notice given. The plaintiff further contends that the charge as alleged was not proven and that it violates the fundamentals of natural justice to find a violation on a theory different from that alleged in the notice.

"[I]f . . . [administrative] agencies deemed to be necessary in our complex society are to serve the purposes for which they are created and endowed with vast powers, they must accredit themselves by acting in accordance with the cherished judicial tradition embodying the basic concepts of fair play." *Morgan* v. *United States,* 304 U.S. 1, 22, 58 L. Ed. 773, 82 L. Ed. 1129. The right to a hearing means the right to a meaningful hearing with the awareness of what matters must be countered. It em-

braces the right to a reasonable opportunity to know the claims of the opposing party and to meet them. *Morgan* v. *United States,* supra, 18.

The concept of due process, when the government seeks to deprive a person of life, liberty or property, is that the thoroughness of the procedure by which the deprivation is effected must be balanced against the gravity of the potential loss and the interests at stake, and due process requires that the procedure involved must be appropriate to the nature of the case. See *Mullane* v. *Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S. Ct. 652, 94 L. Ed. 865; *Anderson National Bank* v. *Luckett,* 321 U.S. 233, 246, 64 S. Ct. 599, 88 L. Ed. 692. Consequently, it has been held that an appropriate hearing is necessary before a governmental agency may, on the basis of an alleged state of facts, impair the means of a person's livelihood, whether the means be wages or welfare benefits, price rates or a right pursued under a license. *Bell* v. *Burson,* 402 U.S. 535, 91 S. Ct. 1586, 29 L. Ed. 2d 90; *Goldberg* v. *Kelly,* 397 U.S. 254, 90 S. Ct. 1011, 25 L. Ed. 2d 287; *Sniadach* v. *Family Finance Corporation,* 395 U.S. 337, 89 S. Ct. 1820, 23 L. Ed. 2d 349; *Morgan* v. *United States,* supra. The right to a hearing includes the right to notice of the matters to be heard. "The right to a hearing embraces not only the right to present evidence but also a reasonable opportunity to know the claims of the opposing party and to meet them . . . . Those who are brought into contest with the Government in a quasi-judicial proceeding aimed at the control of their activities are entitled to be fairly advised of what the government proposes and to be heard upon its proposals before it issues its final command." *Morgan* v. *United States,* supra, 18–19. The entire

purpose of notice and a hearing is to allow an accused person to test the sufficiency of the charges and to enable the agency, before it acts, to ensure that a proper basis exists in fact and law for its action. There is a failure of due process whenever either notice or hearing, where required, has been so defective that a party has not been reasonably apprised of nor had the opportunity to contest the charges found against him.

Clearly, here the plaintiff had the right to fair notice and hearing before its license could be suspended. Section 14-64 of the General Statutes, which empowers the commissioner to suspend or revoke dealers' licenses, predicates such action on notice and hearing. Moreover, the Supreme Court of the United States, grounding its decision on procedural due process, has held that not even a driver's license, which could be essential in the pursuit of a livelihood, can be suspended without prior notice and an appropriate hearing. *Bell* v. *Burson,* supra. The purpose of the hearing required by § 14-64 is to enable the commissioner to determine whether a licensee accused of misconduct under a statute pertaining to his license has, in fact, violated the statute. The effect of the procedure, if a violation is found, is revocation or suspension of the license, a valuable property right[1] on which the licensee and

---

[1] The United States Supreme Court has indicated that distinctions between "right" and "privilege" are no longer significant with respect to suspension of licenses: "Suspension of issued licenses . . . involves state action that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment. . . . This is but an application of the general proposition that relevant constitutional restraints limit state power to terminate an entitlement whether the entitlement is denominated a 'right' or a

many people may depend for their livelihood. In such circumstances,[2] due process requires that the notice given must advise the party of the facts or conduct alleged to be in violation of the law and must fairly indicate the legal theory under which such facts are claimed to constitute a violation of the law. See *Rodale Press, Inc. v. F.T.C.,* 407 F.2d 1252 (D.C. Cir.); *N.L.R.B. v. Tennsco Corporation,* 339 F.2d 396 (6th Cir.); *Commissioner of Internal*

---

'privilege.' " *Bell* v. *Burson,* 402 U.S. 535, 539, 91 S. Ct. 1586, 29 L. Ed. 2d 90. These words lead us to conclude that a license, being within the scope of the protection afforded by the due process clause, is indeed a property right once it has been issued, and it remains such until its expiration date so long as the laws pertaining to its use are obeyed. "A license to engage in business or practice a profession is a property right that cannot be taken away without due process of law. The granting of such license is a right conferred by administrative act, but the deprivation of the right is a judicial act requiring due process." *State* v. *Parrish,* 254 N.C. 301, 303, 118 S.E.2d 786.

[2] It should be understood that the requirements of due process are not fixed but depend on the nature of the case under consideration and the relative interests, both governmental and private, involved. See, e.g., *Goldberg* v. *Kelly,* 397 U.S. 254, 262–63, 90 S. Ct. 1011, 25 L. Ed. 2d 287; *Cafeteria & Restaurant Workers' Union* v. *McElroy,* 367 U.S. 886, 895, 81 S. Ct. 1743, 6 L. Ed. 2d 1230. This principle is reflected in the Uniform Administrative Procedure Act, §§ 4-166 to 4-185 of the General Statutes, applicable to agency proceedings instituted after January 1, 1972. Section 4-182 of the act draws a distinction between the notice requirements of proceedings involving the issuing of licenses and of proceedings involving the taking away of licenses. Under § 4-182 (a), when the grant, denial or renewal of a license is required to be preceded by notice and a hearing, the notice must under § 4-177 (b) (4) contain "a short and plain statement of the matters asserted." Section 4-182 (c), however, requires notice and hearing for the revocation, suspension, annulment or withdrawal of any license, and the notice must inform the licensee "of facts or conduct which warrant the intended action." The stricter notice requirements for the latter type of proceeding are a function of the more compelling private interest involved; because of this interest, the demands of due process are greater than they are in the former type of proceeding.

*Revenue* v. *West Production Co.*, 121 F.2d 9 (5th Cir.), cert. denied, 314 U.S. 682, 62 S. Ct. 186, 86 L. Ed. 546.

The record here clearly shows that the offense alleged and the offense found were separate and distinct in point of time and in factual detail. The charge alleged against the plaintiff was an offense involving the participation of R & R Atlantic Service, Inc., having to do with the repairs of an oil leak which developed in the complainant's car several days after the sale. At no time prior to or during the hearing was the plaintiff accused or made aware of a charge concerning a reduction of the guarantee given on the sale of the car. We find this case to be indistinguishable from *Rodale Press, Inc.* v. *F.T.C.*, supra. In that case, the complaint and hearing were based on a theory different from that on which the complaint was ultimately sustained by the Federal Trade Commission and the court declared that an agency may not change theories in midstream without giving the party reasonable notice of the change. Id., 1256.

To charge on one theory and then find on another, about which the plaintiff did not know and against which it was not prepared to defend, is contrary to law and would, in this case, constitute the taking of property without due process of law. With respect to the alleged violation of § 14-51, therefore, we conclude that the commissioner's action in failing to put the plaintiff on notice of the charge on which he made a finding was reversible error.

The plaintiff was also charged with a violation of § 14-63-2 (f) of the regulations of the motor vehicle department and received the following notice:

"It is alleged you were not equipped to service Mr. Tait's vehicle when it required rear main oil seal replacement, requiring Mr. Tait to obtain his vehicle from a garage he had not contracted with to repair his car and requiring him to pay the amount of $66.50 prior to the release of his vehicle." Section 14-63-2 of the regulations of the motor vehicle department reads in part: "The following minimum requirements for qualification as a new car dealer are established: . . . (f) Personnel and equipment: (1) At least one mechanic having *thorough* [emphasis added] knowledge of the product handled; (2) sufficient tools and equipment for proper servicing." Regs. Conn. State Agencies § 14-63-2 (f). The evidence before the commissioner was as follows: Three days after the customer purchased the car, he noticed a substantial oil leak. He immediately brought the car to the plaintiff's garage and was told by the service manager, Mr. Chapelle: "We can't fix these things, we are not equipped." The service manager then sent the car to another garage where it was kept for four days. When it developed that the other garage did not correct the leak, Ronald Tait brought the car back to the plaintiff's garage on at least two occasions. The repair was never made, however, and the car continued to leak oil to the date of the hearing.

Since the credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency, and since there is evidence printed in the appendices which reasonably supports the decision of the commissioner, we cannot disturb the conclusion reached by him that the plaintiff did not have the proper personnel and equipment to service the complainant's car.

There is error in part and the case is remanded with direction to modify the judgment as on file by sustaining the appeal of the plaintiff as to the alleged violation of § 14-51 of the General Statutes.

In this opinion the other judges concurred.