[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION CT Page 9922
This is an appeal brought pursuant to General Statutes 8-8
by the plaintiff, New Haven Terminal, Inc. ("New Haven Terminal"), from a denial by the defendant, the Board of Zoning Appeals of the City of New Haven (the "Board"), of the plaintiff's application for a special exception for a scrap metal junk yard.
On January 10, 1992, the plaintiff submitted an application for a special exception to the defendant to operate a junk yard for the storage of scrap metal at 35 Connecticut Avenue, New Haven, Connecticut. (Return of Record [ROR], Item D, Application for Special Exception). The plaintiff simultaneously submitted an application for coastal site plan review, as required by the zoning ordinance for property within a coastal management area. (ROR, Item D, Application for Coastal Site Plan Review).
The property is located in an IH (Heavy Industrial) zone. (ROR, Item D, Application for Special Exception). The plaintiff is the owner of a portion of the property. (ROR, Item D, map of the property). The remainder of the property is owned by the United Illuminating Company, and is leased to the plaintiff pursuant to a lease dated May 18, 1967. (ROR, Item D, map of the property). In September of 1991, the plaintiff leased the property to MJ Metals Inc. ("MJ Metals"). (ROR, Item D, Application for Special Exception).
The property has been used as a storage area for scrap metal since 1981 pursuant to a special exception granted by the defendant on December 16, 1981. (ROR, Item D, letter dated December 16, 1981). The grant of the special exception contained no conditions and had a duration of five years which expired December 31, 1986. (ROR, Item D, letter dated December 16, 1981).
In November of 1991, the City of New Haven discovered that the special exception had expired and notified the United CT Page 9923 Illuminating Company by letter from its Zoning Enforcement Officer that the use of the property was not in compliance with the zoning ordinance. (Plaintiff's Brief, p. 2). The plaintiff was notified of the noncompliance by the United Illuminating Company, whereupon it submitted the application which is the subject of this appeal. (Plaintiff's Brief, pp. 2-3).
The application for special exception was heard by the Board on February 4, 1992. (See ROR, Item V, transcript of the hearing). No decision was made at the hearing because the application was referred to the City Plan Commission for it written findings and recommendations in the form of a report (ROR, Item M, letter dated February 11, 1992). Due to the referral to the City Plan Commission, the plaintiff consented to an extension of time for the defendant's decision until the defendant's April meeting. See General Statutes 8-7d. (ROR Item P, letter dated March 10, 1992). The City Plan Commission considered the plaintiff's application for coastal site plan review at its meetings on February 19, 1992 and March 18, 1992 and on March 18, 1992 the City Plan Commission submitted its recommendation to the defendant that the application for special exception should be granted with conditions. (ROR, Item R Coastal Site Plan Review Report).
However, on April 14, 1992, the defendant voted to deny the plaintiff's application. (ROR, Item U, Board of Zoning Appeals Minutes). The defendant cited three reasons for denial of the application:
 [T]he Board found that the proposed use was not in accord with the public convenience and welfare. The Board had concerns in regard to the following: the potential effect the proposed use might have on the environment; the possibility that processing may have occurred on the premises; and the failure of the applicant to apply for the special exception after its expiration in 1986.
(ROR, Item U, Board of Zoning Appeals Minutes). The plaintiff was notified by certified mail of the defendant's decision to deny the special exception on April 15, 1992 and notice of the decision was published in the New Haven Register on April 20, CT Page 9924 1992. (ROR, Item T, City Notice). Thereafter, the plaintiff timely commenced this appeal by service of process on the necessary parties on April 30, 1992. See General Statutes8-8 (b), (e).
The defendant's consideration of the plaintiff's application is governed by the following sections of the New Haven Zoning Ordinance: Section 42 Use regulations for Business and Industrial Districts; Section 46 Activities and storage in outdoor areas in Business and Industrial Districts; Section 48 Performance standards for Business and Industrial Uses; Section 55 Coastal Management District; and Section 63. D Special Exceptions.
The plaintiff alleges that it is the owner of a portion of the property which is the subject of this appeal, and is the lessee of the remainder of that property, and that it is adversely affected and aggrieved by the decision of the Board. (Plaintiff's complaint, para. 4). The plaintiff is shown as part owner and part lessee of the property on its Application to the Board of Zoning Board of Appeals for a Special Exception, its Application for Coastal Site Plan Review, and a map of the property. (ROR, Item D). Both capacities were conceded by the defendant at the administrative appeal hearing on September 21, 1992. Thus, the plaintiff as owner of a portion of the property and the lessee of the remainder is aggrieved by the Board' decision to deny its application. See Winchester Wood Associates, 219 Conn. 303, 308, 592 A.2d 953 (1991).
The limited scope of judicial review of zoning matters in well established in Connecticut. Horn v. Zoning Board of Appeals, 18 Conn. App. 674, 676, 559 A.2d 1174 (1989). "The controlling question for the trial court is whether the zoning board acted arbitrarily or illegally or so unreasonably as to have abused its discretion." Id. The burden of proof is on the plaintiff to demonstrate that the zoning board acted improperly Pleasant View Farms Development, Inc. v. Zoning Board of Appeals. 218 Conn. 265, 269-70, 588 A.2d 1372 (1991). "Court must not substitute their judgment for that of the zoning board and must not disturb decisions of local boards as long as ones judgment has been reasonably and fairly exercised after a full hearing." Molic v. Zoning Board of Appeals, 18 Conn. App. 159
164, 556 A.2d 1049 (1989).
A zoning board acting on a special permit is required to CT Page 9925 give reasons for its action. General Statutes 8-3c(b). The superior court on appeal must determine only if the reasons giver are reasonably supported by facts discernible in the record an whether the reasons are pertinent to the considerations which that agency is required to apply under the zoning regulations Primerica v. Planning and Zoning Commission, 211 Conn. 85, 96,558 A.2d 646 (1989); Archambault v. Wadlow, 25 Conn. App. 375,380, 594 A.2d 1015 (1991). Since the zoning authority must state reasons for its decision, the court is not at liberty to probe beyond them. DeMaria v. Planning and Zoning Commission,159 Conn. 534, 541, 271 A.2d 105 (1970); Central Bank for Savings v. Planning and Zoning Commission, 13 Conn. App. 448, 457,537 A.2d 510 (1988). On factual issues material to the reasons for the agency's action, the credibility of witnesses is within the province of the board. Torsiello v. Zoning Board of Appeals,3 Conn. App. 47, 49, 484 A.2d 483 (1984). The local board's decision must be sustained if even one of the stated reasons is sufficient to support it. Daughters of St. Paul, Inc. v. Zoning Board of Appeals, 17 Conn. App. 53, 56-57, 549 A.2d 1076 (1988).
The defendant argues in its brief that its reasons for denying the plaintiff's application for a special exception art amply supported by the record. (Defendant's Brief, pp. 4-10). However, the plaintiff argues that the reasons stated by the Board are not adequately supported by the record. (Plaintiff's Brief, pp. 13-16). In reviewing the zoning board's actions "[t]he basic question before this court is whether the board' action is reasonably supported by evidence in the record." Rocchi v. Zoning Board of Appeals, 157 Conn. 106, 110, 248 A.2d 92
(1968); see also DeMaria, supra, 540. If the reasons stated by the Board are not reasonably supported by the record, then the court may find that the Board acted arbitrarily, illegally and in abuse of discretion. Boque v. Zoning Board of Appeals, 165 Conn. 749,751, 345 A.2d 9 (1974).
On April 14, 1992, the defendant voted to deny the plaintiff's application for a special exception based on three reasons. The Board's first reason is that `[t]he Board had concerns in regard to . . . the potential effect the proposed us might have on the environment." (ROR, Item U, Board of Zoning Appeals Minutes). The defendant's concerns are based on regulations found in two sections: (1) section 48.B.5, which states that "[t]he discharge of substances into rivers and into the ocean shall be subject to regulations of the Connecticut State Water Resources Commission, and to any other applicable CT Page 9926 regulation;" and, (2) section 63.D.3, which provides that "[s]pecial exceptions shall be granted only where the Board . . . finds that the proposed use . . . is in accord with the public convenience and welfare. . . ."
Section 63.D.3 does not give support to the defendant's environmental concerns stated in the first reason for its denial of the special exception. The defendant left out important language in section 63.D.3 which indicates that one must take into account specific considerations when determining what uses are "in accord with the public convenience and welfare."
Section 63.D.3 states that a "[s]pecial exception shall be granted only where . . . the proposed use . . . is in accord with the public convenience and welfare after taking into account, where appropriate . . .", and a list of specific considerations follows. (Emphasis added.) That list does not require the Board to consider the environmental impact of the use. See section 63.D.3. A "regulation cannot be construed beyond the fair import of its language to include or exclude by implication that which is not clearly within its express terms." Spero v. Zoning Board of Appeals, 217 Conn. 435, 441, 586 A.2d 590 (1991). The words used in a regulation are to be interpreted in accordance with their natural and ordinary meaning. Id. Section 63.D.3 requires the Board to take into account specific considerations and environmental impact is not one of those considerations. Thus, section 63.D.3 cannot be used as a basis for the defendant's first reason.
Regarding section 48.B.5, the hearing disclosed a great deal of "concern" regarding the "possibility" of the discharge of hazardous substances from stored material on the property, yet there is no real evidence in the record of any such discharge of adverse environmental impact. (ROR, Item V, transcript of the hearing, pp. 8-9, 16-17, 22-23, 26, 28, 34, 37-40). For example a neighbor submitted photographs revealing what "appears" to be propane tank, a puddle with "either gasoline or oil, or something" in it, and "what looks like" an engine or transmission. (ROR, Item K, photographs; Item V, transcript of the hearing, pp. 26, 34). However, there is no evidence in the record of who took the photos, when they were taken, or how often such objects were located on the property. The neighbor, Mr. Argento, who presented the photos, simply stated "I don't know exactly when [they were] taken" and "I would hope you would take it in good faith that . . ." the photos were taken of the site in CT Page 9927 question. (ROR, Item V, transcript, p. 27). Yet the plaintiff stated that the photographs are not of its property and "there's no oil seepage from the pile at all." (ROR, Item N, letter dated February 18, 1992; Item V, transcript, p. 7).
Furthermore, the defendant has failed to show that a engine, transmission, or propane tank are objects which are no allowed in the plaintiff's junk yard. A "junk yard" under section 46.G.1. may contain "any materials . . . which are used salvaged, scrapped or reclaimed but are capable of being reuse in some form, including but not limited to metals, . . . machinery tools, appliances, fixtures, motor vehicles and motor vehicle parts." An engine, transmission, or propane tank is included in this definition and therefore is not prohibited in the plaintiff's junk yard.
There also exists testimony in the record concerning the effect of rust and dust from the scrap metal and the possibility that it would be put into the air, seep into the ground, or runoff into the ocean. (ROR, Item V, transcript, pp. 16, 23, 28, 37). There were many "concerns" expressed throughout the hearing, however there was no affirmative evidence to support these concerns. For example, one neighbor states, "[t]here has to be some runoff . . .". (ROR, Item V, transcript, p. 22). Another neighbor says, "I question whether or not materials that are being crushed are materials that would not have a damaging effect on the soil." (ROR, Item V, transcript, p. 26). A third neighbor stated, "I can't believe that really metal could be cleaned . . . I mean there has to be something it it." (ROR, Item V, transcript, pp. 38-39). The only real evidence pertaining to rust on the property is that the plaintiff's property is not paved, however there is no evidence that any rust or dust exists on the premises which could seep into the soil. (ROR, Item V, transcript, p. 9).
In support of the plaintiff's position, Mr. Tristine, the Vice President of New Haven Terminal, testified at the hearing before the Board that "the type of scrap that they store is not subject to the kind of dust that you would get from fragmented metal." (ROR, Item V, transcript, pp. 17-18). Mr. Tristine also testified that if any storm runoff exists, according to a new regulation such runoff would require an N.P.D.E.S. permit and the plaintiff is "in the process of making application for [such a permit]." (ROR, Item V, transcript, p. 18). In addition, the New Haven City Plan Commission is required by General Statutes CT Page 992822a-92 to take into consideration such environmental impacts when they considered the plaintiff's application for coastal site plan review, and it recommended that the application for special exception should be granted. (ROR, Item R, Coastal Site Plan Review Report). Innuendos and suspicions are no substitute for real evidence and since there is no affirmative evidence in the record showing any adverse environmental impact, the defendant's first reason is not reasonably supported by the record.
The defendant's second reason for denying the plaintiff's special exception is "the possibility that processing [of scrap metal] may have occurred on the premises. . . ." (ROR, Item U, Board of Zoning Appeals Minutes). First, the defendant relies on section 46.G.1. to support its position that "processing" is not allowed in a junk yard. Section 46.G.1. states that:
 A "junk yard" is hereby defined as any land . . . used for the storage, bailing, packing, sorting, handling, disassembling . . . of any material or materials which are used, salvaged, scrapped or reclaimed. . . .
The defendant argues that there is evidence that the plaintiff was "cutting" metal, and under the foregoing definition "cutting" is not allowed. (Defendant's Brief, pp. 7-8). Second, the defendant expresses concerns about "burning" taking place on the premises which violates section 48.B.8 and section 48.B.6 of the Zoning Ordinance. (Defendant's Brief, pp. 708). Section 46.B.8 states that "[n]o burning shall be carried on in any junk yard except in suitable containers at appropriate locations and times . . . and with written permission of the Department of Fire Service."
In support of these two arguments, the defendant relies on the testimony at the hearing of Mr. Naclerio, a neighbor, who said "I was there yesterday. There was a man with a blowtorch cutting a beam on the property. . . ." (ROR, Item V, transcript, p. 22). Also, photographs were introduced which displayed a person dressed in protective gear using a blowtorch on a large beam. (ROR, Item K, photographs; Item V, transcript, p. 27). The defendant argues that "blowtorching" is synonymous with "cutting" or "burning" which is an impermissible activity in a junk yard. (Defendant's Brief, p. 8). CT Page 9929
The photographs of the person with the blowtorch are from the same set of photographs which were mentioned above. There is no evidence as to when the photos were taken or by whom. The plaintiff claims that they were not taken of the property in question. (ROR, Item N, letter dated February 18, 1992; Item V transcript, p. 27). Furthermore, the plaintiff was granted a permit on February 14, 1992 from the Office of the Fire Marshal of the City of New Haven which specifically allows it to "cut and weld" on the premises. (ROR, Item N, Permit). this permit was granted to the plaintiff before the Board made its decision to deny the plaintiff's special exception on April 14, 1992. (ROR Item N, Permit; Item U, Board of Zoning Appeals Minutes).
Further the activity in the photograph showing someone using a blowtorch, even if taking place on the property in question, is not necessarily an impermissible activity. Instead of interpreting this activity as "cutting", it can just as easily be seen as "disassembling" which is allowed in a junk yard pursuant to the definition in section 46.G.1. Moreover, even if this activity amounted to "cutting" and "burning" which is prohibited under the definition in section 46.G.1. and section 46.B.8, "cutting" and the use of a blowtorch to "weld" is permitted pursuant to the plaintiff's permit from the Fire Marshal of the City of New Haven. Thus, the defendant's second reason for denying the plaintiff's special exception is no reasonably supported by the record, and even if the defendant' allegations are adequately supported, such activity is no prohibited because the plaintiff has a permit to "cut and weld' on the premises. (ROR, Item N, Permit).
The defendant's third reason for denying the plaintiff's special exception is that the plaintiff failed to reapply for a special exception after its expiration in 1986. (ROR, Item U, Board of Zoning Appeals Minutes). The defendant bases this reason on section 46.G.10 which states in its entirety that "[n]o special exception for a junk yard shall be granted for a period of more than five years." The defendant interprets this section to mean that if an applicant fails to reapply for a special exception after its expiration, then the applicant is in violation of the zoning ordinance and is therefore an unsuitable person to receive a renewed special exception. (Defendant's Brief, pp. 9-10).
The defendant's interpretation of section 46.G.10 has gone CT Page 9930 beyond the fair import of the regulation's language to include by implication that which is not clearly within its express terms. See Spero, supra, 441. "Generally, it is the function of a zoning board . . . to decide within prescribed limits and consistent with the exercise of its legal discretion, whether a particular section of zoning regulations applies . . . and the manner in which it does apply." Schwartz v. Planning and Zoning Commission, 208 Conn. 14, 152, 543 A.2d 1339 (1988). However, the interpretation of provisions in a zoning ordinance is a question of law for the court, and the court: is not bound by the legal interpretation of the ordinance by the board. Coppola v. Zoning Board of Appeals, 23 Conn. App. 636, 640, 538 A.2d 65
(1990). "Since zoning regulations are in derogation of common law property rights, the regulations cannot be construed beyond the fair import of its language to include or exclude by implication that which is not clearly within its express terms. Spero, supra, 441. The words used in a regulation are to be interpreted in accordance with their natural and ordinary meaning. Id. The zoning authority's action is arbitrary and illegal if the regulation in question is construed beyond fair import of its language. Double I Limited Partnership v. Planning and Zoning Commission, 218 Conn. 65, 72, 588 A.2d 624 (1991).
The language of section 46.G.10 simply states that a special exception shall be granted for no more than five years, it does not state or imply that the failure to renew after those five years makes an applicant unsuitable for renewal. As a result the defendant's interpretation of section 46.G.10. is beyond the fair import of its language and is not supported by the express terms of the regulation.
Furthermore, the court may only consider the reasons state by the defendant for the denial of the plaintiff's application DeMaria, supra, 541. "[W]here a zoning commission has formally stated reasons for its decision, the court should not go behind that official statement of the commission. [The court] should not attempt to search out and speculate upon other reasons which might have influenced some or all of the members of the commission to reach . . . [their] final decision." Id. The defendant's suitability was not stated by the Board as one of it reasons for denial of the plaintiff's application, nor was it mentioned at the hearing. [ROR, Item U. Board of Zoning Appeals Minutes; Item V, transcript of the hearing). Thus, the court need not consider whether the plaintiff is an unsuitable applicant, and in any event there is no evidence in the record CT Page 9931 that indicates that the plaintiff is an unsuitable applicant (ROR, item V, transcript). Moreover, the "suitability" of the applicant was never raised by the defendant in the hearing or in its reasons for denial of the plaintiff's application, an therefore is a violation of due process. (ROR, Item V transcript and Item U, Board of Zoning Appeals Minutes). The "suitability" of the plaintiff is mentioned only in the defendant's brief filed after the administrative hearing. (Defendant's Brief, p. 9). Yet "[t]he right to a hearing embraces not only the right to present evidence, but also reasonable opportunity to know the claims of the opposing party and to meet them. . . ." Hart Twin Volvo Corporation v. Commissioner of Motor Vehicles, 165 Conn. 42, 45, 327 A.2d 588
(1973). "There is a failure of due process whenever [a] hearing . . . has been so defective that a party has not been reasonably appraised of nor had the opportunity to contest the charge found against [it]." Id., 46. Since the "suitability" of the plaintiff was never raised at the hearing, it is a violation of due process to allow the defendant to base its decision on a reason upon which the plaintiff was unable to offer any evidence at the hearing.
"In light of the existence of a statutory right of appeal from the decision of the local zoning authorities . . . a court cannot take the view in every case that the discretion exercised by the local zoning authority must not be disturbed, for if it did the right of appeal would be empty."' Daughters of St. Paul, Inc., supra, 57, quoting Suffield Heights Corporation v. Town Planning Commission, 144 Conn. 425, 428, 133 A.2d 612 (1957). The defendant's reasons for denying the plaintiff's application are not reasonably supported by evidence in the record and therefore the defendant acted arbitrarily, illegally and in abuse of discretion. See Bogue, supra, 751. The plaintiff's appeal is sustained.
The Court declines to order any specific relief as requested by the plaintiff since the Board still has the discretion to limit the term of the permit and to attach additional conditions and safeguards as it deems necessary to protect the public welfare pursuant to Section 63.D.5.
Judgment shall enter accordingly.
Joseph A. Licari, Jr., Judge CT Page 9932