[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff Paul D. Powers, a licensed chiropractor, appeals the decision of the Board of Chiropractic Examiners finding that he failed to comply with the applicable standard of care in examining a patient. The Board ordered the plaintiff to serve nine months of probation, pay a civil fine of $1,000.00, and complete a course in breast examination at an accredited chiropractic college. The Board acted pursuant to General Statutes §§ 19a-17 and 20-29. The plaintiff brings this appeal pursuant to General Statutes § 4-183. The court finds in favor of the plaintiff.
Certain essential facts are not in dispute. On January 21, 1993, the Board notified the plaintiff that it would hold a hearing on charges brought to the Board by the Department of Health Services[1], accusing the plaintiff of misconduct and negligence in the treatment of two patients, JoAnn Knoblauch, and Susan Violette. The Department's statement of charges was included as part of the notice to the plaintiff. The notice indicated that CT Page 13051 charges were brought against the plaintiff pursuant to General Statutes § 20-29.
On April 22, 1993 and June 17, 1993, the Board held a hearing on the charges. The April 22, 1993 session was held before a panel of board members consisting of two members who were chiropractors and two lay members. The June 17, 1993 session was held before a panel of three chiropractors and two lay members. The plaintiff appeared and was represented by counsel. During the hearing on the charges, both sides presented witnesses, whose testimony was taken under oath and subjected to cross-examination, as well as various documentary evidence. The plaintiff testified in his own behalf.
Before a final decision was issued by the Board, the plaintiff filed a Motion to Reopen or in the Alternative to Disqualify Board Members, dated May 17, 1994. The plaintiff s motion concerned an alleged ex parte communication made by Dr. Donald Salomone, a Board member, to the plaintiff prior to the rendering of the final decision. On July 7, 1994 the Board held a hearing on the plaintiff's motion and denied the motion by order dated August 4, 1994.
The Board rendered its final decision on August 4, 1994, dismissing all charges in the second count (as to Ms. Violette). With respect to the first count (as to Ms. Knoblauch), the Board found that "the breast examination that the (plaintiff) actually performed on her was below the standard of care." The Board also found that the plaintiff failed to obtain Knoblauch's informed consent to manipulate her neck and head during the examination and failed to utilize current x-rays of the patient.
On the basis of its findings, the Board concluded that the plaintiff "engaged in incompetent and negligent conduct in the practice of chiropractic" in violation of General Statutes § 20-29. Based on that conclusion, the Board entered the order penalizing the plaintiff as summarized above.
In his brief, the plaintiff advances multiple arguments as grounds for his appeal of the Board's decision. Four of his arguments are directed at the CT Page 13052 sufficiency of the evidence. A fifth argument is that the Board improperly joined the two complaints in one hearing. The court has considered these arguments and reviewed the entire record. In the court's view, basic principles of administrative law dispose of these contentions.
The Board's Factual Findings
"Judicial review of [an administrative agency's action is governed by the Uniform Administrative Procedure Act (General Statutes, c. 54, 4-166 through4-189), and the scope of that review is very restricted . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the [administrative agency] . . . The court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of [its] discretion." (Citations and internal quotations marks omitted.) Board of Education v. Freedomof Information Commission, 208 Conn. 442, 452 (1988). Furthermore, General Statutes § 4-183(j) provides that "(t)he court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact . . . The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record." Moreover, "the Board may rely on its own expertise in evaluating charges against persons licensed by the Board and the requisite standard of care by which to judge such cases."Levinson v. Board of Chiropractic Examiners, 211 Conn. 508,525 (1989).
The court's review of the record in this case leads fit to conclude that there was sufficient and substantial evidence before the Board to support its factual findings, in particular those with respect to the head and neck manipulation, the failure to obtain current x-rays, and the requisite standard of professional care. With regard to the joinder issue, the plaintiff did not establish that he was unduly prejudiced by the Board's CT Page 13053 decision to hear and decide both complaints in one proceeding.
Ex Parte Communication
The plaintiff also contends that the Board committed error in denying his motion to dismiss on the basis of the proven ex parte communication by Dr. Salomone. General Statutes § 4-181(a) provides, in relevant part, that "no hearing officer or member of an agency who . . . is to render a final decision . . . shall communicate, directly or indirectly, in connection with any issue of fact, with any person or party . . . without notice and opportunity for all parties to participate." Subsection (c) of the statute provides in relevant part that "no party . . . in a contested case . . . shall communicate, directly or indirectly, in connection with any issue in that case, with a hearing officer or any member of the agency . . . without notice and opportunity for all parties to participate in the communication." Once there has been a showing that a violation of § 4-181 has occurred, the burden shifts to the agency to prove that no material prejudice has resulted from the prohibited ex parte communication. Martone v. Lensink, 207 Conn. 296, 301
(1988). Specifically, "the appropriate injury regarding prejudice to the appellant's right must focus on whether the agency's decisionmaking process was irrevocably tainted so as to make the ultimate judgment of the agency unfair." Id., 306.
In the present case, the undisputed evidence establishes that the ex parte communication consisted of a conversation that Dr. Salomone had with the plaintiff during which Dr. Salomone informed the plaintiff of the substance of the proposed final decision in the case. The plaintiff has not, however, advanced any convincing argument that he was in any way prejudiced by this conversation, and certainly not to the degree necessary under the rule of Martone v. Lensink, supra, for justifying reversal of the agency's decision. The court finds that he was not so prejudiced. Accordingly, the Board was not required to disqualify Dr. Salomone, and the court may not reverse the Board's judgment on that account. CT Page 13054
The two remaining issues raised by the plaintiff do require the reversal of the Board's decision. These are: (1) that a member of the Board who participated in the final decision should have been disqualified pursuant to General Statutes § 20-25; and (2) that the Board failed to provide adequate notice of the proceeding against the plaintiff.
Disqualification of Board Member
General Statutes § 20-25 provides that "No professional member (of the Board) shall be an elected or appointed officer of a professional society of chiropractors or have been such an officer during the year immediately preceding his appointment (to the Board)."
The court held a hearing on the status of Dr. E. Paul Grimmeisen, who was a member of the Board panel that conducted the hearing on the complaints against the plaintiff and rendered the final decision in the case. Undisputed evidence at the hearing before this court established that, at all relevant times, Dr. Grimmeisen served as Dean or Vice Dean of the Academy of Chiropractic Orthopedics. It is also not disputed that the Dean and Vice Dean of the Academy are officers of the organization. What is in dispute is whether the Academy is "a professional society of chiropractors" within the meaning of § 20-25.
Evidence at the hearing before the court in this case established that the Academy is an organization within the American Chiropractic Association, which is an association open to all licensed chiropractors. Membership in the Academy, however, is restricted to those chiropractors who are certified as chiropractic orthopedists by the American Board of Chiropractic Orthopedists (ABCO). Membership in the Academy is by election, voted on by current Academy members. The Board asserts that not every certified chiropractic orthopedist who applies is elected to membership. The Academy's function is to promote research and development of educational programs for chiropractors and to provide support for ABCO. CT Page 13055
In Jutkowitz v. Department of Health Services,220 Conn. 86, 102-103 (1991), the Supreme Court considered the meaning of the term "professional society of chiropractors" and found that language to be ambiguous as to whether it applied to the particular organization involved in the case. That organization, it should be noted, was wholly different in membership and function from the Academy; it had a restricted number of individual members, some of whom may not even have been chiropractors, and its function was limited to accrediting chiropractic educational institutions.Jutkowitz, supra, 220 Conn. 102, n. 15. Because of the perceived ambiguity in the context of the peculiar facts of the case before it, the Jutkowitz court resorted to a review of the statute's legislative history. It then held that the term "professional society of chiropractors" does not include "an organization whose membership is not generally open to members of the profession and whose principal function is to accredit educational institutions in that field." Id., 102-103.
In contrast to the organization considered by the Supreme Court in Jutkowitz, the Academy has a membership consisting entirely of chiropractors, and its functions embrace a variety of activities in the chiropractic profession. The Jutkowitz "definition," therefore, cast as it is in the negative, provides minimal guidance for this court in determining whether the Academy is a "professional society of chiropractors" within the meaning of § 20-25.
This court finds no ambiguity in the statutory language as applied to the Academy. In any plain and ordinary sense of the words, the Academy is a "professional society of chiropractors." The fact that membership is limited to certified orthopedic chiropractors and that one must be elected to membership does not alter the essential nature of the entity as a group of chiropractors organized to pursue professional activities. Nor do those limitations on membership mean that the organization is not "generally" open to members of the chiropractic profession. There is nothing in the language of the statute to suggest that an organization must be without any membership criteria in order to come within the statutory proviso. Courts must not look beyond CT Page 13056 or attempt to construe the language of a statute whose meaning is plain and unambiguous. Wright v. Commissionerof Correction, 216 Conn. 220, 225 (1990). But even if the limited legislative history that is available is consulted, it does not reveal any intent to exclude an organization like the Academy. See Jutkowitz, supra,220 Conn. 103, n. 16.
Based on the foregoing considerations and evidence adduced at the hearing, the court finds that the Academy is a "professional society of chiropractors" within the meaning of § 20-25. The court also finds that Dr. Grimmeisen was an officer of that organization during the time he functioned as a member of the Board adjudicating the plaintiff's case. Accordingly, the Board's decision, which was based in part at least on Dr. Grimmeisen's participation, may not be affirmed.
Notice of Charges — Due Process
The plaintiff's contention that the Board gave him inadequate notice of the proceedings is based on the disparity between the statement of charges relating to patient Knoblauch and the rationale that the Board cited as the reason for its final decision.
As to patient Knoblauch, the statement of charges alleged in the first count that:
"3. . . a. He [plaintiff] unhooked her bra and squeezed and touched her breasts for approximately fifteen seconds; and/or
b. He attempted to use a stethoscope during the examination without removing the patient's johnny; and/or
c. He failed to accede to the patients request that he stop his touching of her neck and head during the above-referenced visit; and/or
d. He failed to utilize current x-rays of the patient prior to commencing treatment; and/or
e. He lifted up the lower portion of the patient's johnny in an apparent effort to view her genital area for CT Page 13057 no therapeutic reason.
4. The above-referenced conduct violates § 20-29 of the Connecticut General Statutes."
As to patient Violette, the statement of charges alleged in the second count that:
"3 . . . a. He [plaintiff] touched her breasts after she informed him she had recently had a breast exam; and/or
b. He made inappropriate and/or sexual comments during the course of his treatment; and/or
c. He removed her undergarments in an inappropriate manner.
4. The above-referenced conduct violates § 20-29 of the Connecticut General Statutes."
At the conclusion of the statement of charges, the Department "pray(ed) that The Connecticut Board of Chiropractic Examiners, as authorized in § 20-29, revoke or take any other actions as authorized in § 19a-17
against the chiropractic license of Paul Powers as it deems appropriate and consistent with law." That prayer for relief was also included in the notice of the proceeding given to the plaintiff.
The plaintiff's specific claim is that the allegations in paragraph 3.a. of the first count, regarding the handling of the patient's breasts, notified the plaintiff that he was being charged essentially with misconduct of a sexually assaultive nature. The plaintiff further claims that the Board's ultimate finding, that the breast examination was permissible but negligently performed, represents a wholly different theory of misconduct and one of which he was not adequately notified in advance. The court agrees.
Section 20-29, cited as indicated in the notice, includes both "illegal" and "incompetent or negligent conduct in the practice of chiropractic" as alternative grounds for disciplinary action by the Board. The CT Page 13058 reference to the statute in the notice, therefore, did not provide the plaintiff any real guidance for determining which theory of misconduct the Board was considering with respect to a particular accusation. It was necessary to examine the text of the accusation in order to make such determination.
The allegations in counts one and two of the statement of charges, quoted above in their entirety, establish that a significant portion of the Department's charges against the plaintiff consisted of accusations of intentional misconduct of a sexually assaultive nature involving two women patients. Although there are certainly accusations of negligence or malpractice in the charges concerning patient Knoblauch, the unmistakable impression conveyed by the notice is that the Department was accusing the plaintiff of illegal conduct in his treatment of both women. Most significantly, there is nothing in the statement of charges to indicate that the Department was accusing the plaintiff of performing an examination of the patient's breasts that was below the applicable standard of professional care.
To confirm the clear impression given by the notice of the hearing, the Department emphasized, in its opening argument to the Board, that the plaintiff was charged with sexual misconduct, not with failure to perform an adequate examination. Counsel for the Department stated that "[t]his is not a case with either woman about the propriety of an appropriate breast exam being offered within the context of a chiropractic visit. That's not an issue today. What's at issue is the type of touching that went on and the experiences that the women had to endure because of this inappropriate touching by Dr. Powers." Counsel for the Department subsequently repeated that theory several times throughout the proceeding. In essence, the Department charged that the plaintiff should not have touched the patient's breasts at all in the manner that he did.
Furthermore, although the Board never explicitly articulated how it interpreted the charge involving Knoblauch, it did do so in its ruling on the similar charge regarding the breast examination of the other patient. The allegation as stated in the notice CT Page 13059 pertaining to Violette, like the one involving Knoblauch, was basically only that the plaintiff touched the patient's breasts. Nevertheless, in its final decision, the Board stated that it interpreted that charge to be "an allegation of a lack of informed consent." Such touching, without consent of the patient, is sexually assaultive conduct, illegal under General Statutes § 53a-73a, Sexual Assault in the Fourth Degree. It is reasonable to infer that the Board interpreted the charge involving Knoblauch the same way.
Despite the focus of the notice and the hearing itself on the issue of assaultive sexual misconduct, the Board concluded in its decision that "It was permissible for the [plaintiff] to perform a breast examination on Ms. Knoblauch. However, the breast examination that the [plaintiff] actually performed . . . was below the standard of care. . . . The [plaintiff] engaged in incompetent and negligent conduct in the practice of chiropractic. Accordingly, the Board finds that the [plaintiff] violated Connecticut General Statutes §20-29." In effect, the Board exonerated the plaintiff of the form of misconduct that it had charged in its notice to him and, instead, found him guilty of misconduct based on an entirely different theory, one of which he had no advance notice.
The law concerning the adequacy of notice of charges is set forth in the Uniform Administrative Procedure Act and the due process provisions of the state and federal constitutions. General Statutes § 4-177 provides, in pertinent part:
 (a) In a contested case, all parties shall be afforded an opportunity for hearing after reasonable notice.
 (b) The notice shall be in writing and shall include: (1) A statement of the time, place, and nature of the hearings; (2) a statement of the legal authority and jurisdiction under which the hearing is to be held; (3) a reference to the particular sections of the statutes CT Page 13060 and regulations involved; and (4) a short and plain statement of the matters asserted. If the agency or party is unable to state the matters in detail at the time the notice is served, the initial notice may be limited to a statement of the issues involved. Thereafter, upon application, a more definite and detailed statement shall be furnished.
The statement of charges in a disciplinary proceeding before the defendant Board is also governed by the provisions of General Statutes § 4-182(c). That statute provides in pertinent part as follows:
 No revocation, suspension, annulment or withdrawal of any license is lawful unless, prior to the institution of agency proceedings, the agency gave notice . . . to the licensee of facts or conduct which warrant the intended action. . . .
"`The stricter notice requirements [of § 4-182(c)] are a function of the more compelling private interest involved'" in license revocation and suspension proceedings. Levinson v. Board of Chiropractic Examiners,
supra, 211 Conn. 534, quoting Hart Twin Volvo Corporationv. Commissioner of Motor Vehicles, 165 Conn. 42, 47, n. 2,327 A.2d 588 (1973).
The notice requirements in license revocation proceedings also have a basis in constitutional due process provisions. "When the potential result of an agency proceeding is the suspension of a license upon which a person depends in earning his or her living, due process requires that the notice given must advise the party of the facts or conduct alleged to be in violation of the law and must fairly indicate the legal theory under which such facts are claimed to constitute a violation of the law." (Citations and internal quotation marks omitted.) Jutkowitz v. Department of HealthServices, supra, 220 Conn. 93. CT Page 13061
The Supreme Court's holding in Hart Twin VolvoCorporation v. Commissioner of Motor Vehicles, supra,165 Conn. 42, is of particular significance for the present case. In Hart Twin Volvo, the court held: "To charge on one theory and then find on another, about which the plaintiff did not know and against which it was not prepared to defend, is contrary to law and would, in this case, constitute the taking of property without due process of law." Id., 48. The essential teaching of Hart Twin Volvo is that the notice of a license revocation or suspension proceeding must include not only a particularized statement of the facts of the alleged misconduct, but also a statement of the "legal theory under which such facts are claimed to constitute a violation of the law." Id., 47.
Based on the undisputed facts in the record, the court concludes in this case that there was a significant disparity between the legal theory of misconduct indicated in the notice to the plaintiff and the legal theory of misconduct that was the basis of the Board's final decision. That conclusion alone, however, would not be sufficient to justify reversal of the Board's decision. General Statutes § 4-183(j) provides that the court may reverse an agency decision on constitutional grounds only if "substantial rights of the person appealing have been prejudiced." Even if the notice is defective, therefore, the plaintiff must establish that the defect created substantial prejudice to him in the conduct of the proceedings.
In Jutkowitz v. Department of Health Services,
supra, 220 Conn. 86, cited by the Board in its brief on this issue, the plaintiff claimed that the board's notice of charges failed to specify that a particular form of treatment, used by the plaintiff, would constitute "incompetent" practice per se. At the subsequent hearing, nevertheless, the plaintiff introduced evidence to attempt to prove that the treatment in question was in fact a recognized procedure at chiropractic college and, therefore, not per se evidence of incompetence. The court held that the plaintiff's efforts at the hearing to address and counter what later became the board's precise factual finding indicated that he was not substantially prejudiced by the lack of notice of the board's theory of CT Page 13062 malpractice. Id., 93-94.
In the court's view, the Jutkowitz "exemption" from the due process rule does not rescue the Board's decision in this case. In his brief, the plaintiff argues that he was prejudiced by the notice because he presented a defense solely to rebut the Department's charges of sexual misconduct. The court's review of the record substantiates that claim. The plaintiff's principal witness, Dr. Joseph M. Boyle, D.C., was called as an expert witness to testify that the plaintiff's examination of Knoblauch's breasts was not inappropriate.[2] In the course of this testimony, Dr. Boyle also testified as to the correct procedure in performing a thorough breast examination. He also testified that fifteen to twenty seconds would be a minimal time period that would be required to perform a breast examination. But this testimony was explicitly for the purpose of showing that the touching was appropriate and not excessive; that is, to rebut the accusation in the notice that the touching constituted sexual misconduct.
The prejudice to the plaintiff is further demonstrated by the use the Board subsequently made of his own evidence. In its final decision, after exonerating the plaintiff of the charge of sexual misconduct, the Board turned to a new theory of misconduct and found that the plaintiff "was unduly hurried while performing the examination and did not consider his patient appropriately." The Board dismissed the Department's accusation that the handling of the patient's breasts was unwarranted and excessive, then turned around and found, with perhaps unintended irony, that "it is not possible to perform [a thorough] breast examination in fifteen seconds."
In summary, any evidence that the plaintiff may have introduced on the subject of the proper standard of professional care in performing breast examinations was merely incidental to his main purpose, which was to rebut the only accusation of which he had been notified; that is, that his conduct was essentially criminal. It is fair to assume that the presentation of his case would have been entirely different if he had known that the Board CT Page 13063 would review his conduct in the context of a charge of negligence or incompetence. He was, therefore, prejudiced by being unaware of the true nature of the charges against him and thus unable adequately to defend against them.
Remand
Pursuant to General Statutes § 4-183(j), the court must sustain the appeal if it finds that substantial rights of the plaintiff have been prejudiced by decisions of the agency that are "(1) In violation of constitutional or statutory provisions (or) . . . (3) made upon unlawful procedure." As indicated, the court finds that the Board's final decision in this case was made upon unlawful procedure in that Dr. Grimmeisen should have been disqualified from participation. Further, the Board's decision with respect to the breast examination referenced in paragraph 3.a. of count one in the notice of charges violated the plaintiff's rights under the due process provisions of the federal constitution and General Statutes § 4-182(c). These conclusions require that the plaintiff's appeal be sustained.
The necessary disqualification of Dr. Grimmeisen requires that the case be remanded to the Board for a new decision without his participation. The inadequate notice concerning the breast examination also requires that the case be remanded. Since the Board's original decision exonerated the plaintiff of the only charge concerning that examination of which he had been notified and since the plaintiff has not, of course, challenged that aspect of the Board's decision, the new decision may not include any different finding or conclusion with respect to that examination, nor may the new decision contain any penalty or other order pertaining to that charge.
The Board shall use the record of the original administrative proceeding as the basis for its new decision. If the membership of the Board has changed since its original decision was rendered, the Board shall, before rendering a new decision, prepare a proposed final decision and afford the parties an opportunity to respond to that proposal, including the right to file exceptions and to present briefs and oral CT Page 13064 arguments to the Board. See Halpern v. Board ofEducation, 231 Conn. 308, 314-315 (1994).
The plaintiff's appeal is sustained and the case is remanded to the Board for further proceedings consistent with this decision.
MALONEY, J.