RICHARD SPERO *v.* ZONING BOARD OF APPEALS
OF THE TOWN OF GUILFORD
(14040)

PETERS, C. J., SHEA, CALLAHAN, GLASS and COVELLO, Js.

---

Argued December 5, 1990—decision released February 12, 1991

*Roger Sullivan,* for the appellant (plaintiff).

*Thomas P. Byrne,* for the appellee (defendant).

GLASS, J. The principal issue in this appeal is whether the defendant, the zoning board of appeals of the town of Guilford (board), unreasonably interpreted the meaning of a Guilford zoning regulation permitting the use of a "food and beverage take-out service from within [a restaurant] building" and excluding "take-out service windows" to prohibit the use of an outside ordering station for the placing of orders for take-out food and beverages. The trial court determined that the board's interpretation of the regulation was reasonable and upheld the board's decision denying the application of the plaintiff, Richard Spero, for a permit to construct such an ordering station outside of his restaurant. We affirm the judgment of the trial court.

The facts giving rise to this appeal are not in dispute. The plaintiff owns and operates a McDonald's restaurant located in a commercial zone in Guilford. In April, 1989, the plaintiff applied to the Guilford zoning

enforcement officer for a permit to erect an ordering station outside the restaurant. The proposed ordering station consisted of an outside menu board and intercom system that would enable the plaintiff's patrons to drive up and place take-out orders while remaining in their vehicles. The patrons would then park their vehicles and retrieve the food and beverages ordered by entering and exiting the building through a "take-out" door that the plaintiff proposed to add to his existing facility.[1]

On May 3, 1989, the zoning enforcement officer denied the plaintiff's application for failure to comply with Article II, § 23, Table No. 2b, item 28 (a) of the Guilford zoning regulations, which provides in pertinent part: "Restaurants and other Food and Beverage Service Establishments, as follows: a. where customers are served food and/or beverage only when they are seated at tables or counters and at least 75% of the customer seats are located within an enclosed building, *which use may include a food and beverage take-out service from within the building (excluding take-out windows)* when only incidental to the primary permitted use." (Emphasis added.) The zoning enforcement officer stated as his grounds for denial: "The taking of orders is a part of the service and the Regulation does not provide for any service outside the building."

The plaintiff appealed to the board from the denial of his application. The board conducted a public hearing regarding the appeal on May 24, 1989, and it was agreed that the appeal would be tabled pending receipt of advice from the town's legal counsel. Thereafter, the board submitted this question to counsel: "Whether the Guilford Zoning Regulations permit as part of a restaurant use the establishment of an outside drive-up

---

[1] The zoning enforcement officer granted the plaintiff permission to add the take-out door.

ordering station where orders are placed from the customer's vehicle. The customer then parks and enters the restaurant to receive his or her order. . . ." In response, counsel advised the board in a letter: "After reviewing the Zoning Regulations I am of the opinion that the proposed use described herein is not permitted. I agree with the opinion rendered by the Zoning Enforcement Officer . . . ." On June 19, 1989, the board reconvened to consider the plaintiff's appeal. The minutes of the meeting reveal that counsel's opinion letter was read and considered. At the conclusion of the meeting, the board issued a written denial of the plaintiff's appeal stating in pertinent part: "It is the opinion of this Board that the decision of the Zoning Enforcement Officer . . . is correct and the Board concurs with this decision."

The plaintiff then appealed to the Superior Court, alleging in part: (1) that the board's determination that the regulation did not permit the use of his proposed ordering station was unreasonable; (2) that the board illegally delegated its decision-making authority to town counsel by allowing counsel to decide his appeal; and (3) that the regulation was impermissibly vague in violation of his federal and state constitutional rights to due process of law. The trial court decided each of these issues against the plaintiff and rendered judgment dismissing his appeal.

Thereafter, the plaintiff petitioned for and was granted certification to appeal from the judgment of dismissal to the Appellate Court, and we transferred the appeal to this court in accordance with Practice Book § 4023. The plaintiff now claims that the court improperly determined: (1) that the board reasonably interpreted the regulation to prohibit the use of his proposed ordering station; (2) that the board did not ille-

gally delegate its decision-making authority to town counsel; and (3) that the regulation was not unconstitutionally vague.[2]

I

The plaintiff's principal claim is that the board unreasonably interpreted the regulation's requirement that take-out service occur within a restaurant building to prohibit the use of his proposed ordering station. In support of his claim, the plaintiff notes that the regulations do not define the word "service," and that one dictionary definition of the word focuses upon the delivery aspect of restaurant service: "[T]he bringing of food and drink to diners seated at a table; the work or activity of waiting at table . . . ." Webster's Third New International Dictionary. He therefore contends that accepting take-out orders, as distinguished from delivering the items ordered, is not part of the "take-out service" that is required by the regulation to occur within his restaurant building. Since the use of the proposed ordering station would not involve delivery of take-out orders outside the building, and the accept-

[2] The plaintiff also claims that the board's consideration of town counsel's opinion letter after the close of the public hearing amounted to an illegal consideration of "ex parte evidence" that he had no opportunity to examine or refute, and that the trial court improperly placed the burden of proving prejudice arising from this action upon him. Although the plaintiff included the former allegation in his complaint, he failed to brief the issue in his trial brief, and presumably for this reason, the court did not address the issue in its memorandum of decision. See Practice Book § 285A. If the plaintiff orally argued the issue before the court, which we are unable to determine without the benefit of the trial transcript, it was incumbent upon him to move for an articulation with respect to the issue pursuant to Practice Book § 4051. Having failed to do so, the plaintiff has not fulfilled his duty to provide an adequate record for our review; see Practice Book § 4061; and we therefore decline to review his claims. See Practice Book § 4185; *Connecticut Ins. Guaranty Assn.* v. *Union Carbide Corporation,* 217 Conn. 371, 393, 585 A.2d 1216 (1991); *Associated Catalog Merchandisers, Inc.* v. *Chagnon,* 210 Conn. 734, 747, 557 A.2d 525 (1989).

ance of such orders would not be accomplished by an impermissible "take-out window," the plaintiff concludes that the board's interpretation and application of the regulation was unreasonable. We are unpersuaded.

"Generally, it is the function of a zoning board or commission to decide 'within prescribed limits and consistent with the exercise of [its] legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply. The trial court had to decide whether the board correctly interpreted the section [of the regulations] and applied it with reasonable discretion to the facts. *Pascale* v. *Board of Zoning Appeals,* 150 Conn. 113, 116, 117, 186 A.2d 377 [1962]; *Stern* v. *Board of Zoning Appeals,* 140 Conn. 241, 244, 99 A.2d 130 [1953]. . . .' *Toffolon* v. *Zoning Board of Appeals,* 155 Conn. 558, 560–61, 236 A.2d 96 (1967)." *Schwartz* v. *Planning & Zoning Commission,* 208 Conn. 146, 152, 543 A.2d 1339 (1988). In applying the law to the facts of a particular case, the board is endowed with a liberal discretion, and its decision will not be disturbed unless it is found to be unreasonable, arbitrary or illegal. Id. " '[U]pon appeal, the trial court reviews the record before the board to determine whether it has acted fairly or with proper motives or upon valid reasons . . . . We, in turn, review the action of the trial court.' *Willard* v. *Zoning Board of Appeals,* 152 Conn. 247, 248–49, 206 A.2d 110 (1964)." *Adolphson* v. *Zoning Board of Appeals,* 205 Conn. 703, 707, 535 A.2d 799 (1988). The burden of proof is on the plaintiff to demonstrate that the board acted improperly. Id. Because the record discloses that the board correctly interpreted and applied the regulation, we conclude that the trial court properly determined that the board's decision denying the plaintiff's appeal was not unreasonable, arbitrary or illegal.

The regulation is a local legislative enactment, and in its interpretation we seek to discern the intent of the legislative body as manifested in the words of the regulation. *Planning & Zoning Commission* v. *Gilbert,* 208 Conn. 696, 705, 546 A.2d 823 (1988). Since zoning regulations are in derogation of common law property rights, however, the regulation cannot be construed beyond the fair import of its language to include or exclude by implication that which is not clearly within its express terms. Id.; *Capalbo* v. *Planning & Zoning Board of Appeals,* 208 Conn. 480, 490–91, 547 A.2d 528 (1988). The words employed by the local legislative body are to be interpreted in accordance with their natural and usual meaning; *Silitschanu* v. *Groesbeck,* 208 Conn. 312, 315, 543 A.2d 737 (1988); *Harlow* v. *Planning & Zoning Commission,* 194 Conn. 187, 193, 479 A.2d 808 (1984); and any interpretation that would torture the ordinary meaning of the words to create ambiguity will be rejected. *DeWitt* v. *John Hancock Mutual Life Ins. Co.,* 5 Conn. App. 590, 594, 501 A.2d 768 (1985). Common sense must be used in construing the regulation, and we assume that a rational and reasonable result was intended by the local legislative body. See *Nickel Mine Brook Associates* v. *Joseph E. Sakal, P.C.,* 217 Conn. 361, 370–71, 585 A.2d 1210 (1991).

We first note that the dictionary definition relied upon by the plaintiff does not conclusively establish that the word "service" in the regulation means only the delivery of take-out food and beverages. That definition clearly concerns service rendered to restaurant patrons who consume food and beverages while seated at tables. The regulation, on the other hand, applies to "take-out" restaurant service. As demonstrated by the dictionary definition of the word "take-out," restaurant service of the take-out type is rendered in connection with "food not to be consumed on the premises." Webster's Ninth New Collegiate Dictionary.

More instructive in this case, therefore, is the dictionary definition of the word "service" that is not primarily directed toward traditional table dining: "[T]he work performed by one that serves." Id. The word "serve," in turn, is variously defined as "to wait on customers," and "to furnish or supply with something needed or desired." Id.

In light of these definitions, and taking a common sense approach to the construction of the regulation, we cannot say that the board unreasonably interpreted the regulation to mean that the accepting of orders for take-out food and beverages is a part of the take-out service that must occur within the plaintiff's restaurant building. The proposed ordering station is designed by the plaintiff to attract additional take-out business, and to simplify the purchasing process for those of his patrons who prefer to be accommodated, at least in part, while in their vehicles. Thus, the plaintiff's provision of the ordering station is in the broad sense a "service" that he would render to his patrons. More fundamentally, the ordering station is a mechanism by which his employees, whose voices would be electronically transmitted over an intercom located outside of the building, could accept orders for take-out food and beverages.[3] Without the acceptance of such orders, their ultimate delivery, and in fact the entire transaction, could not occur. The acceptance of orders is therefore an integral and indeed indispensable component of the take-out service that the plaintiff would provide. Consequently, we conclude that the construction of the regulation adopted by the board and upheld by the trial court was not unreasonable, arbitrary or illegal.

[3] We are unpersuaded by the plaintiff's argument that the use of an ordering station for the acceptance of take-out orders should be viewed as equivalent to the acceptance of such orders over a telephone, a use which is not prohibited. The acceptance of orders over a telephone is not accomplished by telephones provided by the plaintiff outside his restaurant building, but by telephones purchased by patrons and installed in their homes.

Our conclusion is reinforced by the express exclusion in the regulation of "take-out service windows," with which the provision permitting "take-out service from within the building" must be reconciled. *Planning & Zoning Commission* v. *Gilbert, supra*, 706; see *Essex Leasing, Inc.* v. *Zoning Board of Appeals*, 206 Conn. 595, 601, 539 A.2d 101 (1988). Although the meaning of the phrase "take-out service window" is not defined in the regulation, a take-out window at a restaurant is commonly operated in conjunction with an ordering station such as that proposed by the plaintiff. The fair import of the phrase "take-out service window" thus encompasses its typical adjunct, the ordering station. It is therefore reasonable to presume that in aiming to eliminate the use of take-out windows, the local legislative body did not intend to prevent restaurant owners from using only such windows, but also intended to eliminate other commonly associated adjuncts to "drive-through" service such as the ordering station. To allow the plaintiff to construct and operate his combination of ordering station and take-out door would thus thwart the evident purpose of the local legislative body. See *Planning & Zoning Commission* v. *Gilbert, supra*, 704; see also *Caltabiano* v. *Planning & Zoning Commission*, 211 Conn. 662, 667, 560 A.2d 975 (1989).

II

The plaintiff next claims that the board illegally delegated its decision-making authority to town counsel by allowing counsel to decide his appeal. In support of this claim, the plaintiff principally relies on the fact that at the June 19, 1989 meeting, the chairman of the board stated that he "felt that since the Board sought the advice of town counsel they should accept his opinion," and on the further fact that the board ultimately denied his appeal.[4] The plaintiff therefore asserts that

[4] The plaintiff also points to the board's written denial of his appeal, the substance of which in his view "substantially mirrored" the content of coun-

the board delegated its duty to interpret the regulation to counsel. We disagree.

The board, composed of laymen, is entitled to technical and professional assistance regarding matters beyond its expertise. *Blaker* v. *Planning & Zoning Commission,* 212 Conn. 471, 478, 562 A.2d 1093 (1989); *Frito-Lay, Inc.* v. *Planning & Zoning Commission,* 206 Conn. 554, 571, 538 A.2d 1039 (1988). This entitlement is necessarily implied in the legislation creating the board and setting forth its duties. See *Yurdin* v. *Plan & Zoning Commission,* 145 Conn. 416, 421, 143 A.2d 639, cert. denied, 358 U.S. 894, 79 S. Ct. 155, 3 L. Ed. 2d 121 (1958).

In this case, the assistance rendered to the board by town counsel concerned the statutory construction of a zoning regulation. The board was no less entitled to such advice on a primarily legal question, a matter certainly within the technical expertise of an attorney, than it is entitled to factual and statistical information supplied by its personnel trained in such matters. See *Holt-Lock, Inc.* v. *Zoning & Planning Commission,* 161 Conn. 182, 185, 286 A.2d 299 (1971); *McCrann* v. *Plan & Zoning Commission,* 161 Conn. 65, 77, 282 A.2d 900 (1971); *Hawkes* v. *Plan & Zoning Commission,* 156 Conn. 207, 212, 240 A.2d 914 (1968); see also *Yurdin* v. *Plan & Zoning Commission,* supra. Moreover, although counsel's construction of the regulation was adverse to the plaintiff, he was a neutral employee of the board rather than a party to the controversy. See *McCrann* v. *Plan & Zoning Commission,* supra, 78; *Kyser* v. *Zoning Board of Appeals,* 155 Conn. 236, 251, 230 A.2d 595 (1967); compare *Blaker* v. *Planning &*

---

sel's letter. Since both documents contain only a general statement of agreement with the decision of the zoning enforcement officer, we find this facial similarity inadequate to demonstrate that the board delegated its decision-making authority to counsel.

*Zoning Commission,* supra, 474 (information supplied by attorney for party to controversy); *Pizzola* v. *Planning & Zoning Commission,* 167 Conn. 202, 208, 355 A.2d 21 (1974) (information supplied by party to controversy). There is no evidence that he was biased against the plaintiff.

In addition, there is no indication in the administrative record that the board treated the opinion of counsel as anything more than advice. While the chairman suggested that counsel's advice should be accepted, the record reveals that at least two members of the five member board were unprepared to accept that advice because counsel had not cited any legal authority in his letter. These members supported the plaintiff's position in the vigorous debate that ensued regarding the meaning of the regulation, and two other members of the board expressed reasons for supporting the zoning enforcement officer's interpretation that were not set forth by counsel in his letter. There is no evidence that either counsel's opinion or the chairman's statement influenced the alignment of these members in opposition to the plaintiff's appeal. Furthermore, despite the chairman's initial statement, there is no indication that the chairman ultimately cast his vote against the plaintiff in reliance solely or decisively on the opinion of counsel rather than on the reasons advanced by his fellow board members. We therefore conclude that the trial court properly determined that the board did not illegally delegate its decision-making authority to town counsel or otherwise act arbitrarily in requesting and considering counsel's opinion.

### III

The plaintiff's final claim is that the terms of the regulation are vague and imprecise, thus rendering the regulation susceptible to arbitrary application in violation of his federal and state constitutional rights to

due process of law. Although he concedes that "an attack on zoning regulations as unconstitutional per se requires an independent proceeding," the plaintiff contends that "[t]he constitutional injunction against vagueness is determined by the application of a regulation to the particular facts at issue and requires examination of the claim within that factual context . . . ." He relies on *State* v. *Jones,* 215 Conn. 173, 575 A.2d 216 (1990), in support of this proposition.

In *State* v. *Jones,* supra, 179–80, we considered a criminal defendant's vagueness challenge to a criminal statute, and we stated that "it is well established that, as a general rule, 'the constitutionality of a statutory provision being attacked as void for vagueness is determined by the statute's applicability to the particular facts at issue. . . .' " (Citations omitted.) As the board points out, however, "[t]he rule extant under our zoning cases is that a party who has sought to avail himself of a zoning ordinance by making an application thereunder is precluded in the same proceeding from raising the question of its constitutionality. . . . A party, however, could of course attack the constitutionality of the zoning regulations in an independent proceeding." *Bierman* v. *Planning & Zoning Commission,* 185 Conn. 135, 139–40, 440 A.2d 882 (1981). This rule requiring the validity of a zoning regulation to be independently challenged in a declaratory judgment action serves the important policy of "ensur[ing] that all affected landowners would be provided with an opportunity to become involved in the proceedings." *Norwich* v. *Norwalk Wilbert Vault Co.,* 208 Conn. 1, 7, 544 A.2d 152 (1988). Since this policy concern is not implicated in the criminal context, *Jones* did not overrule or otherwise modify the rule applicable in zoning cases. We therefore conclude that the plaintiff, having availed himself of the regulation by filing an appli-

cation thereunder, is not entitled to attack the regulation as unconstitutionally vague.

The judgment is affirmed.

In this opinion the other justices concurred.