[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff Gloria Corbit was issued a cease and desist order on January 24, 1991, by the Lebanon zoning enforcement officer ordering her to terminate the occupancy of her property located on Red Cedar Lake in Lebanon for more than thirty days between November 2 and April 30. The plaintiff appealed the order to defendant Lebanon Zoning CT Page 3574 Board of Appeals ("ZBA"), which upheld the zoning enforcement officer's order stating that the plaintiff's use of the property violated 4.4a of the Lebanon zoning regulations pertaining to seasonal use. This is an appeal from the decision of the ZBA.
I. Facts
The following relevant testimony was presented at the hearing before the ZBA. The plaintiff and her late husband purchased a lot of less than one-acre known as lot number 131 (362 Lakeside Drive), Red Cedar Lake, Lebanon, Connecticut, on August 10, 1961. Thereafter, the plaintiff began constructing an A-frame residence on the property. The house was closed in sometime during 1963. The Planning and Zoning Commission of the Town of Lebanon issued a certificate of occupancy to the plaintiff on October 5, 1971, which stated that the plaintiff's property was "seasonal."
The ZBA issued a written decision on June 27, 1991, in which it upheld the zoning enforcement officer's opinion stating that the plaintiff's use of the property was in violation of 4.4a of the Lebanon Zoning Regulations in that the plaintiff was using her property as a year-round residence when it is zoned only for seasonal use. The ZBA stated further that it based its decision on the plaintiff's failure to prove construction and year-round occupancy of the dwelling located on the less-than one-acre lot prior to the adoption of interim zoning regulations in April, 1962, and, therefore, the plaintiff had failed to prove that she had a pre-existing nonconforming use.
The plaintiff has filed this appeal of the ZBA's decision alleging that the ZBA, in upholding the actions of the zoning enforcement officer, acted illegally, arbitrarily and in abuse of its discretion.
II. Aggrievement
This appeal was taken pursuant to General Statutes8-8(a) which permits an appeal by a property owner who is aggrieved by the action of the Board.
Aggrievement is a jurisdictional question and a prerequisite to maintaining an appeal. Winchester Wood CT Page 3575 Assoc. v. Planning and Zoning Commission, 219 Conn. 303, 307
(1991). An owner of the subject property is aggrieved and entitled to bring an appeal. Id. 308.
At the hearing on March 3, 1993, before the court, the plaintiff testified that she is the owner of the subject property and had been issued a cease and desist order by the Lebanon zoning enforcement officer, which was upheld by the ZBA. The court ruled that the plaintiff is aggrieved.
III. Scope of Review
In reviewing the decision of an administrative agency, the trial court may not substitute its judgment for that of the agency. Frito-Lay, Inc. v. Planning and Zoning Commission, 206 Conn. 554, 572-73 (1988). The court is limited to considering whether the ZBA has acted illegally, arbitrarily or in abuse of its discretion. Id., 573.
The ZBA's decision must be sustained if any of the reasons given for it are valid. Goldberg v. Zoning Commission, 173 Conn. 23, 26 (1977). "The question is not whether the trial court would have reached the same conclusion, but whether the record before the agency supports the decision reached." Calandro v. Zoning Commission,176 Conn. 439, 440 (1977).
a. Pre-existing Nonconforming Use
The plaintiff argues that she used the dwelling on her property year-round prior to the adoption of the Lebanon zoning regulations and could, therefore, continue such use. The Lebanon zoning regulations read in relevant part:
4.4 L — LAKE DISTRICT
a. Permitted Uses.
 1) One seasonal dwelling or camp on a minimum 12,000 sq. ft. lot, may be erected in any Lake District as shown on the Zoning Map, namely: Williams Pond, Brewster Pond, Stiles Pond, Big Pond, Savin Lake, Spencer Pond, Amston Lake and CT Page 3576 Red Cedar Lake.
 2) One 1-family year-round dwelling on minimum two acre lot.
. . . .
b. Special Regulations.
. . . .
 2) All uses not specifically permitted are prohibited.
 6.1 NONCONFORMING USES OF LAND AND STRUCTURES
 a. Lawful uses of land and structures becoming nonconforming by adoption of these regulations may continue subject to the following conditions: . . .
Section 4.4a of the zoning regulations defines seasonal occupancy as follows:
 . . . living in and housekeeping in a dwelling for the period from May 1 to November 1 only, except that the dwelling may be occupied for an additional 30 days between November 2 and April 30.
The plaintiff's lot size is less than two-acres and, therefore, she could only maintain a year-round dwelling upon the property pursuant to 6.1 if she had lawfully adoption of the zoning regulations prohibiting her use.
The Town of Lebanon first adopted zoning in April, 1962. The "interim" regulations promulgated at that time provided in relevant part:
 Pending the preparation of a Master Plan and Zoning Regulations for the Town of Lebanon by the Planning and Zoning Commission of the Town of Lebanon, the following interim zoning regulations CT Page 3577 relating to minimum lot sizes are promulgated by said Commission persuant (sic) to the provisions of Chapter 124 of the Connecticut General Statutes.
 Section 1. Except as otherwise provided in Section II, hereof, the minimum lot size in the Town of Lebanon shall be one acre.
 Section II. The minimum lot area for one seasonal dwelling . . . shall contain not less than 6000 square feet . . .
 For the purpose of these regulations, a seasonal dwelling shall mean a dwelling . . . intended, designed or used for continuous human habitation only between the months of May to October, inclusive.
These "interim" regulations were held to be valid in Lebanon v. Woods, 153 Conn. 182 (1965). The Appellate Court, in Planning Zoning Commission v. Craft, 12 Conn. App. 90,92, cert. denied, 205 Conn. 804 (1987), interpreted the 1962 regulations to prohibit year-round use of a dwelling on less than a one-acre lot. However, in Craft the Appellate Court found that the plaintiffs, who bought the property in 1958, had established a lawful pre-existing nonconforming year-round use of the dwelling on a less than one-acre lot.
The permanent zoning regulations promulgated in 1966 provided in pertinent part:
L — LAKE DISTRICT
 1) One Seasonal dwelling or camp on a minimum 6,000 sq. ft. lot, may be erected in any Lake District . . .
 2) One 1-family year-round dwelling on a minimum one-acre lot.
. . . . CT Page 3578
b. Special Regulations:
. . . .
 2) All uses not specifically permitted are prohibited.
These 1966 regulations apply to Red Cedar Lake. Planning 
Zoning Commission v. Gilbert, 208 Conn. 696, 708 (1988).
Inasmuch as the minimum lot size for a year-round dwelling has been one-acre since April, 1962; see Planning 
Zoning Commission v. Craft, supra, 92; the plaintiff must have established a year-round use prior to April, 1962, in order for such use to qualify as a pre-existing nonconforming use.
 To be a nonconforming use the use must be actual. It is not enough that it be a contemplated use nor that the property was bought for the particular use. The property must be so utilized as to be "irrevocably committed" to that use, Lebanon v. Woods, supra, 197.
The plaintiff presented testimony that she and her husband purchased the property in 1961, began to build a house in 1962 and that the house was "closed in" in 1963. Two affidavits were introduced by the plaintiff's neighbors. One affidavit, sworn to by Harry Stoll, states that the plaintiff and her family have lived at the subject premises every weekend between November 1 and April 30 since the latter part of 1961. The other affidavit, sworn to by Elizabeth Hartman, states that the plaintiff and her family have lived at the subject premises on every weekend between that the plaintiff's husband had plowed the driveway from the early 1960's to 1982, when he gave up plowing. Evidence was presented that the taxes paid on the property were based upon seasonal use and that the plaintiff never challenged that categorization. Further evidence was presented which indicated that a building permit was issued on August 28, 1963, and that the assessor's office completed a card stating that the building was 75% complete in 1967.
The ZBA determined that the plaintiff did not CT Page 3579 establish that she had used the dwelling on her less than one-acre lot year round prior to 1962. The ZBA based its determination on the evidence that the property was not "closed in" until 1963 and that it was only 75% complete in 1967.
The ZBA's determination that the plaintiff had not established a year-round use before April of 1962 is supported by the record.
b. Improper Interpretation
The plaintiff argues that the ZBA applied the wrong cut-off date to determine when the plaintiff had to establish a pre-existing use. The plaintiff argues that, despite the language of the regulations, the ZBA has interpreted any use prior to 1971 to be pre-existing nonconforming use exempt from the zoning regulations. In support of this contention, the plaintiff cites minutes from a ZBA meeting in which the members discuss the issuance of certificates of occupancy on or about 1972.
 The question of whether a particular statute or regulation applies to a given set of facts is a question of statutory interpretation. Although the position of the municipal land use agency is entitled to some deference, the interpretation of provisions in the ordinance is nevertheless a question of law for the court. The court is bound by the legal interpretation of the ordinance by the town. Rather, the court determines legislative intent from the language used in the regulations. (Internal citations omitted.) Coppola v. Zoning Board of Appeals, 23 Conn. App. 636, 640 (1990).
The plaintiff's argument that the court must follow a policy adopted by the ZBA is erroneous. The ZBA interpreted the regulations properly in requiring the plaintiff to have established a year-round use prior to April, 1962, in order to establish a nonconforming use.
c. Issuance of Certificate of Occupancy CT Page 3580
The Planning and Zoning Commission, without holding a hearing, issued a seasonal certificate of occupancy concerning the plaintiff's property on October 5, 1971. The plaintiff argues that this divested her vested property rights and, therefore, the ZBA acted illegally by relying on this certificate in making its decisions.
The ZBA based its decision to uphold the zoning enforcement officer's issuance of a cease and desist order on the ground that the plaintiff failed to prove that she had a pre-existing nonconforming use prior to the adoption of the zoning regulations. As discussed above, this decision is supported by the record.
The ZBA did not base its decision on the certificate of occupancy issued by the Planning and Zoning Commission nor did such certificate divest the plaintiff of any Property rights.
d. Denial of a Fair Hearing
The plaintiff's final argument is that she was denied a fair hearing because the ZBA communicated with the town counsel regarding the plaintiff's pending appeal. The communication between the ZBA and the town counsel resulted in a letter which became a full exhibit in the proceedings. In the letter, the town counsel stated that it was his opinion that the plaintiff's property does not have nonconforming status and does not qualify as a year-round dwelling. The plaintiff argues that this communication denied her a fair hearing because it usurped the jurisdiction and authority of the ZBA in that the town counsel gave his opinion on the ultimate issue to be decided.
The decision in Spero v. Zoning Board of Appeals,217 Conn. 435 (1991), is dispositive of this issue. In Spero, the Supreme Court held that the "board was no less entitled to such advice on a primarily legal question, a matter certainly within the technical expertise of an attorney, than it is entitled to factual and statistical information supplied by its personnel trained in such matters." Id., 444. The court further stated that it could not be said that the board's reliance on the opinion of the town counsel was illegal or arbitrary because the town CT Page 3581 counsel was not a party to the controversy nor was there any evidence that he was biased against the plaintiff or that the board treated the town counsel's opinion as more than advice. Id., 444-45.
Therefore, because there is no evidence that the town counsel was biased against the plaintiff or that the ZBA treated his opinion as anything more than advice, the ZBA did not act illegally, arbitrarily or in abuse of its discretion in seeking the opinion of the town counsel regarding the nonconformity of the plaintiff's property.
IV. Conclusion
For the reasons stated above, the plaintiff's appeal is denied.
Hendel, J.