[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 6927
This is an administrative or record appeal by the plaintiff, James Caporizo, from a decision of the defendant, the Zoning Board of Appeals of the city of Stamford (ZBA). The ZBA affirmed the issuance of a partial certificate of occupancy for property owned by Stamford Ridgeway Associates, L.P. (Ridgeway), also a defendant in this appeal. The property consists of approximately thirteen acres and is located between Summer and Bedford Streets in Stamford. The subject premises are situated in the "Community Shopping Center District — Designed" (CSC-D) in accordance with Section 9. F of the city of Stamford Zoning Regulations (regulations). The purpose of the zone is to "promote the rehabilitation, reconfiguration, and modernization of existing large Shopping Centers essential to the neighborhood and community shopping needs of the City of Stamford . . ." On or about August 27, 1997, Ridgeway received a partial certificate of occupancy which enabled The Stop Shop Supermarket Company (Stop Shop) to use a portion of the shopping center as a tenant of Ridgeway.
This case commenced with a complaint by the plaintiff, who owns a unit in a condominium development on Bedford Street opposite the subject premises, to the ZBA regarding the issuance of the partial certificate of occupancy. The ZBA affirmed the issuance of this partial certificate, and this appeal followed pursuant to General Statutes § 8-8 (b). The basis for the complaint to the ZBA and the appeal to this court is a provision in the CSC-D zone regarding "Maximum Floor Area." Section 9.F.4 (f) provides that "individual retail food uses shall not exceed a gross floor area of 60,000 square feet." The plaintiff claims that Stop Shop is using 72,000 square feet for retail food use in violation of the regulations, and that the 60,000 square foot maximum includes storage space. Stop Shop leased a total of 72,000 square feet from Ridgeway, "60,000 square feet of gross floor area (the `Primary Space'), together with certain office/storage space containing approximately 12,000 square feet of gross floor area (the `Secondary Space')."
The plaintiff has standing to pursue this appeal in accordance with General Statutes § 8-8 (a)(1), which defines an "aggrieved" person as one "owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board." Although the plaintiffs dwelling CT Page 6928 unit itself is not within one hundred feet of the subject property, the plaintiff does have an interest in the "common elements" of the condominium development which are within 100 feet of the subject premises . .
Ridgeway argues that this case should be dismissed because the ZBA should not have entertained the plaintiffs appeal from the issuance of the partial certificate of occupancy. The powers and duties of the ZBA are set forth in Section 19.1.2 of the regulations, which provides that "any person claiming to be aggrieved . . . by any order, requirement or decision made by the Zoning Enforcement Officer may appeal to the Zoning Board of Appeals as provided in Section 8-7 of the Connecticut General Statutes as amended." General Statutes § 8-7 provides for appeals of "any order, requirement or decision of the official charged with the enforcement of the zoning regulations. . . ." The return of record discloses, however, that the partial certificate of occupancy in this case was not issued by the zoning enforcement officer, but rather by a different person, the "Building Official," Anthony P. Strazza, in August, 1997. The city's Office of Legal Affairs advised the ZBA that for several reasons it did not have jurisdiction to hear the appeal from the issuance of the partial certificate of occupancy by the Building Official. The ZBA nevertheless noticed a public hearing and conducted such a hearing at which the plaintiffs attorney spoke. On July 1, 1998, the ZBA rendered a decision by a 4 to 1 vote that read: "[t]he Board finds that the partial certificate of occupancy dated August 27, 1997 was properly issued in accordance with the Stamford Charter which supersedes Section 18.A of the Stamford Zoning Regulations. Furthermore, the Board finds that Section 9.F.4(f) of the Stamford Zoning Regulations has not been violated." Section 18.A of the regulations provides that a certificate of occupancy is issued by the Zoning Enforcement Officer. Section 9.F 4(f) is the provision regarding a maximum of 60,000 square feet for retail food uses. The ZBA, in its decision, refers to section C5-30-6 of the City of Stamford Charter, originally enacted as Special Act No. 312, 1947, which provides: "[w]ithin the Office of Operations, there shall be a Building Official who . . . shall be responsible for the issuance of building permits and certificates of occupancy . . ."
Whether the ZBA should have entertained the plaintiff's application is an interesting issue but irrelevant in the sense that "following an appeal from the action of a zoning enforcement officer to a zoning board of appeals, a court reviewing the CT Page 6929 decision of the zoning board of appeals must focus, not on the decision of the zoning enforcement officer, but on the decision of the board and the record before the board." Caserta v. Zoning Board of Appeals 226 Conn. 80, 82, 626 A.2d 744 (1993). This rule, therefore, requires a decision Oil the merits as the court must decide whether the regulation was "correctly interpreted" by the ZBA and applied "with reasonable discretion to the facts."Spero v. Zoning Board of Appeals. 217 Conn. 435, 440,586 A.2d 590 (1991). The issue is only whether the defendant ZBA's decision was arrived at "fairly or with proper motives or upon valid reasons . . . (Internal quotation marks omitted.) Id.
It is not implausible to interpret the 60,000 square foot provision in the manner urged by the plaintiff, but the reading of section 9.F.4(f) of the regulations for the CSC-D zone by the defendant ZBA and Ridgeway is more logical. Stop Shop is only using 60,000 square feet for "individual retail food uses." The return of record indicates that the 12,000 square feet used for storage is separated from the retail use by a hallway and stairwell. Moreover, it appears that the storage space is subleased to a different entity, DMG Realty, and is also used by tenants other than Stop Shop.
The interpretation of a zoning ordinance involves "the intention of the legislative body as found from the words employed in the ordinance. . . . The words employed are to be interpreted in their natural and usual meaning." (Citations omitted.) CRRA v. Planning Zoning Commission,46 Conn. App. 566, 571, 700 A.2d 67 (1997). A member of the ZBA stated the issue in a rather pithy manner. "Retail is retail. You sell out of the store. You don't sell out of the warehouse."
In deciding whether the ZBA' s decision interpreting the 60,000 square foot provision should be reversed, the court also has in mind the axiom that the construction placed upon a statute or regulation by the agency responsible for its enforcement and administration is entitled to great deference. Griffin Hospitalv. Commission on Hospitals Health Care, 200 Conn. 489, 496,512 A.2d 199, appeal dismissed, 479 U.S. 1023, 107 S.Ct. 781,93 L.Ed.2d 819 (1986). The members of the ZBA discussed the meaning of section 9.F.4(f) at the time it voted to deny the plaintiffs application. At one point the chairman spoke as follows: "it seems to me the perfectly reasonable and the most reasonable interpretation of this regulation [9.F.4(f)] is — which says: `[p]rovided that individual retail food uses shall not CT Page 6930 exceed a gross floor area of 60,000 square feet,' it seems to me that the most reasonable interpretation of that regulation is that the selling floor shall not exceed a gross floor area of 60,000 square feet. That's an individual retail food use. I don't think that the storage space was meant to be included in that 60,000 square feet. Then we have the two affidavits from the members of the [Zoning] Board, who sat on the case at the time, who also said that. But just looking at the words of the regulation, that seems to me the most reasonable interpretation. Then on the other issue, the Section 18 . . . which says that the — no land, no building shall be occupied until a certificate of occupancy shall have been issued by a Zoning Enforcement Officer. Well, the testimony at the public hearing was that the revised city charter supercedes this section and, in fact, the Zoning Enforcement Officer these days, since that revision which would have been in 1987, does not have the power to issue a certificate of occupancy, so that seems to me takes care of that issue."
Moreover, "[i]n reviewing the actions of a zoning board of appeals we note that such a board is endowed with a liberal discretion, and its [actions are] subject to review by the courts only to determine whether [they were] unreasonable, arbitrary or illegal . . . Francini v. Zoning Board of Appeals 228 Conn. 785,791, 639 A.2d 519 (1994), quoting Pleasant View FarmsDevelopment. Inc. v. Zoning Board of Appeals, 218 Conn. 265,269-70, 588 A.2d 1372 (1991).
It is the court's opinion that the ZBA did not act unreasonably, arbitrarily or illegally in interpreting section 9.F.4(f) of the regulations and in affirming the issuance of the partial certificate of occupancy. Thus, the decision of the defendant ZBA is affirmed. General Statutes § 8-8 (1).
So Ordered.
Dated at Stamford, Connecticut, this day of June 10th, 1999.
William B. Lewis, Judge