[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 I STATEMENT OF THE CASE
The plaintiff, Susan Ozanne, appeals the decision of the defendant, Darien Zoning Board of Appeals, denying her request for a certificate of zoning compliance, issuing a cease and desist order regarding the use of an accessory apartment, and ordering that the kitchen in that apartment be removed.
 II PROCEDURAL HISTORY
On January 22, 1999, Darien Zoning Enforcement Officer David J. Keating (ZEO) denied the plaintiffs, Susan Ozanne's, request for a certificate of zoning compliance, issued a cease and desist order regarding the use of an accessory apartment located upon her premises at 118 Goodwives River Road, and ordered that the kitchen be removed from this accessory apartment. (Return of Record [ROR], Item 24.) On February 19, 1999, the plaintiff appealed the decision of the ZEO to the Zoning Board of Appeals (board). (ROR, Item 23.) After allowing the plaintiff's request for an extension, on June 16, 1999, the board held a public hearing on the plaintiffs appeal. (ROR, Items 21, 25.) After the close of the public hearing, the board voted unanimously to uphold the decision of the ZEO. (ROR, Item 4.) In a request from the board dated June 28, 1999, the CT Page 12430Darien News-Review was asked to publish a notice of the board's decision on July 1, 1999.[1] (ROR, Item 2.) In a request from the board dated July 1, 1999, the Stamford Advocate was also asked to publish a notice of the board's decision on July 3, 1999.[2] (ROR, Item 3.)
The plaintiff commenced this appeal by service of process on July 14, 1999, pursuant to General Statutes § 8-8.
 III FACTS
The plaintiff owns property located at 118 Goodwives River Road, in the R-1 zone of the town of Darien, which she purchased in 1997. (ROR, Item 23.) This property, known as the Bell Mansion, was built between 1806 and 1809. (ROR, Item 15, Attachment [Aft.] A.) In 1925, Darien adopted its first set of zoning regulation, and the Bell Mansion was placed in the A residence zone, which allowed up to five families per acre. (Id., Aft. D.) In 1936, the zoning regulations were amended to allow only single family homes in residence zones. (Id., Aft. I.) Many historical documents show this home as a two-family dwelling both before and after these amendments. (ROR, Item 15.) Throughout the 1950s, 60s, 70s and 80s, the town continued to classify the Bell Mansion as a two-family home. (Id., Aft. L, N, O, Q, R.) The 1988-1997 tax assessor's property street cards also continued to list the home as a two-family. (Id., Aft. S.)
A previous homeowner, Carolyn Ruscoe Burt, averred, on September 26, 1998, that she resided at either the Bell Mansion or the Orchard Cottage[3] from 1936 to 1994 and that, during the entire time, there existed an apartment, known as 118a Goodwives River Road, at the Bell Mansion, which was occupied by various people. (Id., Att. H.) In 1989, Burt sold the Bell Mansion to Robert and Lee Cushman. (Id. Att. R.) The ZEO testified at the public hearing that he remembers discussions with Lee Cushman concerning an addition she wanted to build, and he informed her that the addition could only be approved if she gave up the accessory apartment, because he could not approve the expansion of a nonconformity. (Id.) On August 2, 1994, Lee Cushman applied for both a building permit and a zoning permit to allow an addition to the Bell Mansion. (ROR, Item 25, Att. T.) On both applications, she checked the box entitled "one family" or "single-family" residence to describe the property.[4] (Id.) On October 20, 1997, when Lee Cushman finally sought a certificate of occupancy, the ZEO issued the certificate with the notation "Entire structure is to be used only as a single dwelling unit." (Id.)
In an affidavit dated June 1, 1999, Lee Cushman averred that at the time she purchased the property, she was informed that it contained two legal residential units. (ROR, Item 9.) She further averred that she CT Page 12431 continually rented the accessory apartment from the date she purchased it until she sold it to Ozanne, with the exception of a short time during which she lived in the apartment herself because work was being performed in the main house. (Id.) Robert Berlingo submitted an affidavit stating that he resided in the separate apartment, known as 118a Goodwives River Road, from May to November, 1997. (ROR, Item, 8.) Cushman's attorney, Pat Gross, also drafted a memo for her files indicating that the ZEO stated that if the people purchasing the property from Cushman wanted to keep it as two-family they needed to have the ZBA officially grandfather that use. (ROR, Item 15, Aft. U, Item 25, pp. 32-33.)
On December 1, 1997, the plaintiff purchased the Bell Mansion from Lee Cushman. (Warranty Deed.) In February, 1998, home improvement contractor Larry Larkin, sought a zoning and building permit on behalf of the Ozanne's in order to remodel a bathroom and add a greenhouse. The ZEO noted on the application that the "entire structure is one dwelling unit and cannot contain a second dwelling unit or an apartment." (ROR, Item 15, Aft. V.) The plaintiffs also applied for a change of use variance to renovate the barn, and, at the April 2, 1998 hearing, when questioned about the apartment, James Ozanne, the plaintiffs husband, testified that the home was a single family house and that he and his family were living in the apartment while he was performing renovation work on the main house. (ROR, Item 6, p. 2.) James Ozanne also stated that he had no intention of demolishing the apartment because "[i]t's a great place to have guests and we will have guests there." (Id., p. 3.) The ZBA, then, granted the variance with three conditions, including the condition that the "second kitchen shall be removed from the house. The house shall only be used as a single family dwelling. It may not contain an apartment or second dwelling unit." (Id. Aft. W., p. 3.)
The plaintiffs mother, Isabell Shennan, submitted an affidavit attesting to the fact that her tenancy at the apartment, known as 118a Goodwives River Road, began on July 29, 1998. (ROR, Item 12, Item 25, p. 32.) James Ozanne indicated that Sherman resided there two to three months. (ROR, Item 25, p. 32.)
In a letter dated November 11, 1998, James Ozanne informed the ZEO that he and the plaintiff had let the variance lapse because they did not agree with the condition to demolish the kitchen. (ROR, Item 15, Aft. Y.) James Ozanne also sought to clarify any misunderstandings over his statements at the April 2, 1998 hearing, explaining that, although they "did not intend to use the apartment as an income-producing unit . . . [they] have always intended to use it as an additional dwelling unit for the use of [their] family and guests. (Id.) He also requested a certificate of zoning compliance for the apartment. (Id.) In a subsequent letter, inadvertently dated January 13, 1998, James Ozanne again asked CT Page 12432 for a certificate of zoning compliance for the apartment. (ROR, Item 15, Aft. Z.) In a letter dated January 22, 1999, the ZEO denied the request for a certificate of zoning compliance and ordered that the Ozanne' s "remove any and all kitchen facilities from the professed apartment / second dwelling unit and use the entire structure only as one dwelling unit." (ROR, Item 23.)
On February 19, 1999, the plaintiff appealed the decision of the ZEO to the board. After a June 16, 1999 public hearing, the board voted unanimously to uphold the decision of the ZEO. (ROR, Item 4.) On July 14, 1999, the plaintiff commenced this appeal by service of process on the ground that the board acted illegally, arbitrarily and in abuse of the discretion vested in it, in that it failed to publish the notice of decision within the fifteen days mandated by General Statutes §8-28,[5] and the reasons for denial of the plaintiffs appeal were not supported by the record.
 IV JURISDICTION
Appeals from administrative agencies exist only under statutory authority. See Charles Holdings. Ltd. v. Planning Zoning Board ofAppeals, 208 Conn. 476, 479, 544 A.2d 633 (1988); Simko v. Zoning Board ofAppeals, 206 Conn. 374, 377, 538 A.2d 202 (1988). "A statutory right of appeal from a decision of an administrative agency may be taken advantage of only by strict compliance with the statutory provisions by which it is created." (Internal quotation marks omitted.) Simko v. Zoning Board ofAppeals, supra, 206 Conn. 377. Such provisions "are mandatory and jurisdictional in nature, and, if not complied with, the appeal is subject to dismissal." (Internal quotation marks omitted.) Id.; see alsoCharles Holdings. Ltd. v. Planning Zoning Board of Appeals, supra,208 Conn. 479.
 A Aggrievement
The question of aggrievement is essentially one of standing. McNallyv. Zoning. Commission, 225 Conn. 1, 5-6, 621 A.2d 279 (1993). "Aggrievement is established if there is a possibility . . . that some legally protected interest . . . has been adversely affected." (Internal quotation marks omitted.) Connecticut Resources Recovery Authority v.Planning Zoning Commission, 225 Conn. 731, 739 n. 12, 626 A.2d 705
(1993). Mere generalizations and fears, however, do not establish aggrievement. See Caltabiano v. Planning Zoning Commission,211 Conn. 662, 668, 560 A.2d 975 (1989).
CT Page 12433 Those who own land that abuts or is within a radius of one hundred feet of the land involved in any decision of a planning or zoning board are statutorily aggrieved. See General Statutes § 8-8 (a). An owner of the subject property is aggrieved and entitled to bring an appeal. SeeWinchester Woods Associates v. Planning Zoning Commission, 219 Conn. 303,308, 592 A.2d 953 (1991). The plaintiff is the owner of the Bell Mansion, located at 118 Goodwives River Road, and has properly pleaded; (see complaint, ¶ 610); and proven aggrievement. (See Warranty Deed.)
 B Timeliness of the Appeal and Service of Process
An appeal from a decision of a zoning board "shall be commenced by service of process . . . within fifteen days from the date the notice of the decision was published. . . ." General Statutes § 8-8 (b). The chairperson of the board and the clerk of the municipality shall be included in such service. See General Statutes § 8-8 (e).
On June 16, 1999, the board held a public hearing on the plaintiffs appeal and subsequently voted to uphold the decision of the ZEO. (ROR, Item 4.) The parties agree that publication of the notice of decision occurred in the Stamford Advocate on July 3, 1999, seventeen days after the board's decision, and in the Darien News-Review on July 8, 1999, twenty-two days after the board's decision.[6] On July 14, 1999, the writ, summons and citation for this appeal were served in the hands of Maralyn VanSciver, town clerk of Darien, and Margaret Walker, chairperson of the ZBA. (Sheriff's Return.)
The plaintiff argues that the board's failure to secure publication with the fifteen days mandated by General Statutes § 8-7[7] renders its decision null and void. The board responds by arguing that the late publication occurred through the fault of the Darien News-Review and that it immediately sought to correct the lack of publication by placing a notice in the Stamford Advocate. The board also argues that the plaintiff was not harmed by this delay as is demonstrated by her timely appeal.
The plaintiff urges the court to rely upon the holdings in Akin v.Norwalk, 163 Conn. 68, 301 A.2d 258 (1972) and Hyatt v. Zoning Board ofAppeals, 163 Conn. 379, 311 A.2d 77 (1972). In Akin, the Supreme Court held that the board's failure to publish a notice of decision within the fifteen day statutory period, pursuant to General Statutes § 8-28, rendered its decision void. In Hyatt, the court stated that the reasoning of Akin was also applicable to General Statutes § 8-7 and, therefore, it held that the fifteen day provisions of § 8-7 were also mandatory. As argued by the board, however, General Statutes § 8-7
was amended in 1989 to allow the applicant, herself, to cure the board's CT Page 12434 failure to timely publish. Here, the publication occurred two days late, but the plaintiff did not seek to cure this delay and does not claim that she was, in any way, prejudiced by it.
A similar situation was presented in Wilson v. Planning ZoningCommission, 53 Conn. App. 182, 729 A.2d 791, cert. granted 249 Conn. 927,733 A.2d 850 (1999), concerning the issue of whether the fifteen day time frame for publication of a zone change, pursuant to General Statutes § 8-3 (d), was mandatory. The court reasoned that, in order to give effect to the final sentence of General Statutes § 8-3 (d),[8] it "must find the statutory mandate to be directory. . . . If we were to hold otherwise, the last sentence of § 8-3 (d) would be rendered meaningless." Id. 189. In the present case, the 1989 amendment to General Statutes § 8-7, 1989 Public Acts No. 89-356, § 13, added this same language. Accordingly, it is found that the addition of this curing language; see 1989 Public Acts No. 89-356, § 13; rendered the fifteen publication mandate directory rather than mandatory.
 V JUDICIAL REVIEW
An appeal from an action of a zoning enforcement officer is taken to the zoning board of appeals, which hears and decides the matter de novo. See Caserta v. Zoning Board of Appeals, 226 Conn. 80, 88-89, 626 A.2d 744
(1993). "[F]ollowing an appeal from the action of a zoning enforcement officer to a zoning board of appeals, a court reviewing the decision of the zoning board of appeals must focus, not on the decision of the zoning enforcement officer, but on the decision of the board and the record before the board." Id., 82. "[T]he trial court reviews the record before the board to determine whether it has acted fairly or with proper motives or upon valid reasons." Spero v. Zoning Board of Appeals, 217 Conn. 435,440, 586 A.2d 590 (1991). "In applying the law to the facts of a particular case, the board is endowed with a liberal discretion, and its decision will not be disturbed unless it is found to be unreasonable, arbitrary or illegal." Id. "The burden of proof to demonstrate that the board acted improperly is upon the party seeking to overturn the board's decision." Francini v. Zoning Board of Appeals, 228 Conn. 785, 791,639 A.2d 519 (1994).
 VI DISCUSSION
The plaintiff appeals on the ground that the board acted illegally, arbitrarily and in abuse of the discretion vested in it, in that the reasons for denial of the plaintiffs appeal were not supported by the record. Specifically, the plaintiff argues that the nonconforming use of CT Page 12435 the apartment predates the zoning regulations, and the affidavits of previous owners, as well as the testimony of James Ozanne, confirm that it was never abandoned. The plaintiff further argues that "[i]n the absence of any evidence of the two elements of abandonment of a legally nonconforming use (i.e. non-use for a period of one year together with the intention to relinquish permanently the nonconforming use) the attempt by the [ZEO] and the board to extinguish the legally nonconforming use of the apartment . . . should have no legal force or effect." Plaintiffs memorandum, p. 20.
The board responds by arguing that the use was intentionally abandoned by the previous owner, Cushman, and that the plaintiff was aware of this fact. Specifically, the board argues, "Cushman . . . [made] a knowing and intentional decision to eliminate the apartment use of the premises in order to obtain the necessary permits to expand the dwelling." Board's Memorandum, p. 23. The board further argues that "the record clearly justifies the decision of the [board] to the effect that the prior legally non-conforming multi-family use had been intentionally abandoned prior to plaintiffs purchase of the property. [T]he Ozannes . . . [also made] representations that the structure would be used only as a single family residence [and, therefore,] . . . are estopped from claiming that the subject property legally contains two dwelling units." Id., 26.
General Statutes § 8-2 provides as follows: "[Municipal zoning] regulations shall not prohibit the continuance of any nonconforming use, building or structure existing at the time of the adoption of such regulations. Such regulations shall not provide for the termination of any nonconforming use solely as a result of nonuse for a specified period of time without regard to the intent of the property owner to maintain that use." In addition to the requirements of General Statutes § 8-2, the Darien zoning regulations further provide that: "If any non-conforming use of a building shall cease for any reason for a continuous period of more than one year, or shall be changed to a conforming use, or if the building in or on which such use is conducted or maintained shall be moved for any distance whatever, for any reason, then any future use of such building shall be in conformity with the standards specified by these Regulations for the zone in which such building is located." Darien Zoning Regs., Art. III-14, § 383(d).
Accordingly, pursuant to General Statutes § 8-2, the ZBA had to determine that there was a voluntary intent to abandon the use of the property as a multi-unit dwelling. In addition to the statutory requirement, however, pursuant to Darien Zoning Regs., Art. III-14, § 383(d), the ZBA also had to determine that the use of this property as a multi-unit dwelling had ceased for a continuous period of more than one year or was changed to a conforming use. CT Page 12436
"Abandonment is a question of fact which implies a voluntary and intentional renunciation. Nevertheless, the intent to abandon may be inferred as a fact from the circumstances. . . . The mere discontinuance of a use where there is no intent to abandon is not enough. . . . To establish abandonment, the intention on the part of the owner [must be] to relinquish permanently the nonconforming use. . . . Because the conclusion as to the intention of the landowner is an inference of fact, it is not reviewable unless it was one which the trier could not reasonably make." (Citations omitted; emphasis in original; internal quotation marks omitted.) Cummings v. Tripp, 204 Conn. 67, 93, 527 A.2d 230
(1987).
"To establish abandonment of a nonconforming use it must be proven that: (1) there was a voluntary discontinuance of the use, and (2) the voluntary discontinuance was accompanied by an intent not to reestablish that use." R. Fuller, 9A Connecticut Practice Series: Land Use and Practice (1999) § 52.5, p. 566, citing Caserta v. Zoning Board ofAppeals, 41 Conn. App. 77, 82, 674 A.2d 858 (1996). "The temporary interruption or suspension of a nonconforming use without substitution of a conforming one or such a definite and substantial departure from previously existing conditions and uses as to signify an abandonment of the latter, does not terminate the right to resume them." (internal quotation marks omitted.) Point O'Woods Assn., Inc. v. Zoning Board ofAppeals, 178 Conn. 364, 369, 423 A.2d 90 (1979).
At its meeting following the public hearing on this matter, the board voted unanimously to uphold the decision of the ZEO. The minutes of that meeting[9] reflect the following: After thoroughly reviewing the record and materials, the board unanimously upheld the ZEO's order for the following reasons: "Mr. Walker noted that there is a history of renters on the property, but it is not a continuous history. There is also very specific information submitted in [the ZEO's] presented materials that this is a one-family residence. Mr. Kolbe agreed, stating the Mr. Ozanne has offered to use the structure only for family members, however, he cannot put the Planning and Zoning office in the position of constantly researching family status. Mr. Kolbe said that family members can still use the area considered to be the apartment without a kitchen. All Board members agreed that there is significant information presented by [the ZEO] verbally, on the audiotapes, and in the plans and other documents submitted, that this has been a single-family residence. The Board then unanimously voted to deny the applicant's appeal of the order issued the [ZEO]." (ROR, Item 4.) The board then issued instructions to the plaintiff to remove the kitchen in the apartment and to use the entire structure only as a single-family residence. (Id.)
CT Page 12437 The role of the board in hearing an appeal from an action of a zoning enforcement officer is to hear and decide the matter de novo. See Casertav. Zoning Board of Appeals, supra, 226 Conn. 88-89. Accordingly, the board's role was to hear the evidence and determine, on its own, whether this evidence supported the conclusion that the nonconforming use of this property had been intentionally abandoned for a period of more than one year or intentionally abandoned and put to a conforming use. See General Statutes § 8-7; Darien Zoning Regs., Art. 111-14, § 383(d). The only finding that the board made, however, was that the record supported the ZEO's conclusion that the house "has been a single-family residence." (ROR, Item 4.) This conclusion, however, does not amount to a finding that there was a voluntary and intentional abandonment of the nonconforming use of this structure as a two-family dwelling, nor that such use had ceased for a period of more than one year. Further, even if the record supported the board's conclusion that the home "has been a single-family residence," [t]he mere discontinuance of a use where there is no intent to abandon is not enough." Cummings v. Tripp, supra,204 Conn. 93.
The plaintiff submitted evidence on the historic use of this structure as a two-family dwelling. She also submitted the tax assessor's property cards, up through 1997, showing the home as a two-family. Several affidavits were also submitted attesting that this property was used as a two-family right up until the time that the plaintiff purchased it. Cushman, the immediate predecessor in title, averred that she rented the apartment the entire time that she owned the property, except when she, herself, resided in it, also using it as a separate living unit. Cushman' s last tenant, Berlingo, averred that he lived in the apartment until November, 1997, when the plaintiff was about to close on it. The plaintiffs mother averred that she lived in the apartment for several months in 1998. The plaintiffs husband stated at the March 18, 1998 public hearing that, although they intended to use the home as a single family, they still intended to keep the apartment for use by family members and guests. Further, he told the board that the family was living in it at the time, while work was being performed on the main house. Later, upon realizing that his statements in that regard had been misconstrued, he wrote a letter clarifying that they were not giving up the use of the apartment but were keeping it for use by family and guests.
Nothing in the record reveals to the court that the ZBA considered the question of the plaintiffs or the previous owners s intent to abandon the use of this structure as a multi-unit dwelling, nor is there evidence that the ZBA found the use to be abandoned for a period of more than one year. Where an agency makes "invalid or insufficient findings, . . . [the trial court] must ordinarily remand the matter under consideration to the CT Page 12438 agency for further consideration." Gorman Construction Co. v. Planning Zoning Commission, 35 Conn. App. 191, 199, 644 A.2d 964 (1994). Accordingly, the matter is remanded to the ZBA to make the necessary factual determinations in accordance with its regulations and the General Statutes. The appeal is sustained, costs are allowed as required by § 8-8 (1), and the matter is remanded to the Darien ZBA for action consistent with this opinion.
RYAN, J.