[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This memorandum of decision addresses the appeal filed by James R. Vivian on June 14, 2000, alleging that the defendant, the Zoning Board of Appeals for the town of Clinton (ZBA), acted illegally, arbitrarily and in abuse of its discretion by denying his appeal from an action of the zoning enforcement officer. Rudolf W. Reu, Sophie H. Reu and Waterside Condominium Association, Inc. (collectively, "Reu defendants") were also named as defendants, having an interest in the property. The plaintiff claims that the construction proposed by an application submitted on behalf of the Reu defendants, entitled "Application for Building Permit, Flood Hazard Area Permit and Certificate of Zoning Compliance" (application), is inconsistent with the setback requirements of the zoning regulations in Clinton. The plaintiff also claims that this application fails to provide sufficient information concerning the construction at issue, and that the ZBA improperly failed to state, on the record, its reasons for denying the appeal. (Plaintiff's Memorandum of Argument dated November 22, 2000, #106.)[1]
The parties are all represented by counsel, and have filed memoranda thoroughly stating the basis for their support of and opposition to the plaintiffs action. (Plaintiff's Memorandum, #106; Defendant's Brief (ZBA) dated December 19, 2000, #107; Defendants' Memorandum of Law (Reu defendants) dated April 25, 2001, filed in court April 26, 2001.) The administrative appeal hearing was conducted on April 26, 2001. For the reasons stated below, the court finds that the plaintiff has not sustained his burden of proof, and finds this matter in favor of the defendants, and dismisses the appeal. Bloom v. Zoning Board of Appeals,233 Conn. 198, 206, 658 A.2d 559 (1995).
 I. APPLICABLE FACTS
The court finds the following facts from the record presented with this appeal:[2]
CT Page 8176
The plaintiff owns the property known as 64 Waterside Drive in Clinton. (ROR, Exhibit 22.) In the present action, the plaintiffs the deed to this property establishes that he is an abutting landowner with regard to the property located at 78A Waterside Lane in Clinton. (ROR, Exhibit 22.)
On or about November 18, 1999 the Reu defendants, through an agent, filed an application with respect to the 78A Waterside Lane property. (ROR, Exhibit 1: Application for Building Permit.) The application requested permission to construct a second-story on an existing building located upon the property 78A Waterside Lane. The existing building contained one bedroom and one bath: the application requested sanction for the addition of two bathrooms and two other rooms to the structure. (ROR, Exhibit 1: Building Permit.) The existing building is located in a zone designated as R-20. (ROR, Exhibit 21: Zoning Map.) The existing building is a legally nonconforming structure in that it violates the setback requirements for an R-20 zone.[3] (ROR, Exhibit 1: Property Survey Map; Exhibit 19: Letter from Thomas W. Lane, Clinton Zoning Enforcement Officer dated April 5, 2000.) The proposed addition contemplates a vertical expansion that would not increase the overall footprint of the structure. (ROR, Exhibit 17: Transcript of May 17, 2000 Public Hearing, pp. 7, 11.)
On February 8, 2000, the Zoning Enforcement Officer (ZEO), Thomas W. Lane, approved and certified the zoning compliance section of the application. (ROR, Exhibit 1: Application for Building Permit.) The plaintiff appealed the decision of the ZEO on February 18, 2000. (ROR, Exhibit 1: Appeal dated February 18, 2000.) The appeal was heard by the Clinton ZBA on May 17, 2000. (ROR, Exhibit 7.) The board denied the appeal and duly published the decision as required by statute. (ROR, Exhibit 14.)
 II. JURISDICTION AND STANDARD OF REVIEW A. AGGRIEVEMENT
It is axiomatic that "pleading and proof of aggrievement are prerequisites to the trial court's jurisdiction over the subject matter of a plaintiffs [administrative] appeal." Jolly, Inc. v. Zoning Board ofAppeals, 237 Conn. 184, 192, 676 A.2d 831 (1996). In cases of appeals from a zoning board of appeals, General Statutes § 8-8 (a)(1) defines aggrieved person to include "any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board." Based upon the evidence presented in this record, the court finds that the plaintiff is an abutting landowner aggrieved by the ZBA's decision. See Pierce v. Harwinton Zoning Board ofCT Page 8177Appeals, 7 Conn. App. 632, 635-36, 509 A.2d 1085 (1986).
 B. TIMELINESS AND SERVICE OF PROCESS
General Statutes § 8-8 (b) provides, in relevant part, that an "appeal shall be commenced by service of process in accordance with subsections (e) and (f) of this section within fifteen days from the date that notice of the decision was published as required by the general statutes." General Statutes § 8-8 (e) provides that service "shall be made by leaving a true and attested copy of the process with, or at the usual place of abode of, the chairman or clerk of the board, and by leaving a true and attested copy with the clerk of the municipality."
The record contains a certified copy of the legal notice of decision to be published in the Clinton Recorder on May 23, 2000 indicating that the zoning board of appeals denied the plaintiffs appeal. (ROR, Exhibit 14.) In answering the complaint, each defendant admitted that the notice of decision was duly published. (¶ 8 of ZBA's Answer dated October 24, 2000; ¶ 8 of Reu defendants' Answer dated April 25, 2001.) Furthermore, the sheriffs return indicates that service of process was effectuated on both the town clerk for the town of Clinton and Mark Richards, chairman of the Clinton ZBA, on June 5, 2000. Accordingly, the court finds that the appeal is timely and that the proper parties were served. §§ 8-8 (b), (e).
 C. STANDARD OF REVIEW
In considering this matter, the court has heeded the applicable and time-honored principles of law. "Courts are not to substitute their judgment for that of the [zoning board of appeals] . . . and decisions of local boards will not be disturbed so long as honest judgment has been reasonably and fairly exercised after a full. . . . Upon appeal, the trial court reviews the record before the board to determine whether it has acted fairly or with proper motives or upon valid reasons. . . . The burden of proof to demonstrate that the board acted improperly is upon the plaintiffs." (Internal quotation marks omitted.) Bloom v. ZoningBoard of Appeals, supra, 233 Conn. 206.
 II. SETBACK REGULATIONS IN CLINTON
The plaintiff first claims that the proposed second story addition at 78A Waterside Lane violates the setback requirements established Clinton zoning regulations.[4] This aspect of the plaintiffs argument is premised on the contention that Clinton's setback requirements extend from the ground to the sky instead of merely setting forth ground coverage restrictions and that, using this standard, the proposed construction is CT Page 8178 in violation of the town's zoning regulations. The plaintiff further argues that because the existing structure is legally nonconforming with respect to the setback requirements, it necessarily follows that construction of a second story, even upon the same footprint, would also violate the setback requirements. The defendants counter that the ZBA properly applied the applicable provisions of the zoning regulations in approving the ZEO's action allowing the construction to proceed. The court finds this issue in favor of the defendants.
The court's protocol for reviewing the plaintiffs claims is well established. "Generally, it is the function of a zoning board or commission to decide within prescribed limits and consistent with the exercise of [its] legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply. The trial court [has] to decide whether the board correctly interpreted the section [of the regulations] and applied it with reasonable discretion to the facts. . . . In applying the law to the facts of a particular case, the board is endowed with a liberal discretion, and its decision will not be disturbed unless it is found to be unreasonable, arbitrary or illegal. . . . [U]pon appeal, the trial court reviews the record before the board to determine whether it has acted fairly or with proper motives or upon valid reasons. . . ." (Citations omitted; internal quotation marks omitted.) Spero v. Zoning Board of Appeals, 217 Conn. 435, 440, 586 A.2d 590 (1991). "[T]he interpretation of provisions in the [zoning] ordinance is nevertheless a question of law for the court . . . The court is not bound by the legal interpretation of the ordinance by the [commission]." (Citations omitted; internal quotation marks omitted.) Northeast Parking Inc. v.Planning Zoning Commission, 47 Conn. App. 284, 293, 703 A.2d 797
(1997), cert. denied, 243 Conn. 969, 707 A.2d 1269 (1998).
The plaintiff cites two specific provisions of the Clinton zoning regulations in support of his argument that, as a matter of law, the application for construction must be denied, and that his appeal to the ZBA should have been sustained. The plaintiff relies upon § 8.1.2 of the Clinton zoning regulations as support for his proposition that the town's setback requirements, applicable to the existing structure, extend from the ground to the sky.[5] The plaintiff further asserts that § 13.1.1 of the Clinton zoning regulations establishes a general prohibition against the expansion of any nonconforming structure, so that the addition of a second-story to the existing structure would render the building nonconforming in its total effect.[6] The plaintiff argues that as a result of its failure to honor § 8.1.2 and § 13.1.1, the ZBA acted illegally, arbitrarily and abused its discretion in denying his appeal from the actions of the ZEO. CT Page 8179
The ZBA counters that the proposed expansion of the structure complied with town's zoning regulations in all applicable respects. Specifically, the ZBA argues that its interpretation of § 13.1.1 is reasonable in light of the original legally nonconforming use, the lack of any proposed expansion of the footprint of the existing structure, and that it has strictly interpreted the relevant zoning regulations, which are in derogation of the common law. (ZBA's Brief #107, p. 6-7.) Consistent with the municipal defendant's position, the Reu defendants argue that the strict interpretation required of zoning regulations prohibits the ZBA from denying the application on the basis of the current regulations. (Reu Defendants' Memorandum of Law, p. 4.) In support of this claim, the Reu defendants argue that if the Town of Clinton wanted to protect the air space within its confines, then it could and would have done so expressly by zoning regulation. The Reu defendants further argue that § 13.1.1 should be applied using the following construction: "No non-conforming . . . building . . . shall be enlarged . . . to include any land . . . which is not subject to such non-conformity." (Emphasis added.) (Reu Defendants' Memorandum of Law, p. 3.) They claim that if the ZBA applied the interpretation of § 13.1.1 advanced by the plaintiff, the last sentence of this regulation, permitting the expansion of a nonconforming building, would be rendered a nullity. Upon due consideration, the court adopts the position of the defendants in this matter.
The plaintiff has tendered three Superior Court decisions in support of his arguments. In the absence of precisely applicable appellate level authority on the underlying issues in this case, the court has carefully reviewed both the text and implications of these three trial court opinions. As discussed below, the court finds each of these decisions to be inapposite and unpersuasive in the present matter, as each proffered decision either addresses zoning regulations which are markedly distinct from those in effect in the town of Clinton, or raises issues of zoning policy which are expressly supported by the effective local regulations.
First, the plaintiff would have the court rely upon the decision inSettipane v. Old Saybrook Zoning Board of Appeals, Superior Court, judicial district of Middlesex at Middletown, Docket No. 45435 (February 20, 1987, Arena, J.) to conclude that he has met his burden of proof. InSettipane, an abutting landowner appealed a decision of the ZBA which had granted the defendants a variance of the setback requirements, thereby permitting construction of a second floor addition to an existing nonconforming structure. The court determined that in light of specific zoning regulations adopted by Old Saybrook, the ZBA had acted beyond the scope of its authority in granting the variance at issue.[7] In reaching this decision, the court found that Old Saybrook had adopted a regulation that permitted the enlargement of a nonconforming building CT Page 8180 only if the enlargement was conforming. The court relied on Old Saybrook's own regulatory language in finding that the expansion of the nonconforming use was in contravention of the intent or purpose of the local zoning regulations.[8]
The plaintiff next relies upon Gians v. Zoning Board of Appeals ofWestbrook, Superior Court, judicial district of Middlesex at Middletown, Docket No. 57306 (March 19, 1991, Higgins, J.).[9] That matter involved a property owner's appeal of the ZBA's decision to uphold the action of Westbrook's zoning enforcement officer, denying a certificate of zoning compliance on the grounds that the property owner had not obtained a variance prior to constructing a partial second-story upon a legally nonconforming structure.[10] The ZBA had concluded that the proposed addition would enlarge a nonconforming building. The court reviewed the applicable Westbrook zoning regulations, and found them to prohibit the enlargement of nonconforming structures by the expansion of the building.[11] The court also found that the proposed secondstory addition would enlarge a nonconforming building, and accordingly court dismissed the landowner's appeal. The court rendered the summary conclusion that the proposed addition "would enlarge a nonconforming building, even though the nonconformity itself would not be enlarged" without specifically opining as to whether Westbrook's setbacks were one-dimensional or three-dimensional in effect. Gians v. Zoning Board ofAppeals of Westbrook, supra, Docket No. 057306.
The plaintiff finally relies upon Doyen v. Essex Zoning Board ofAppeals, Superior Court, judicial district of Middlesex at Middletown, Docket No. CV98-0087357-S (March 7, 2000, Schuman, J.). That matter presented an appeal from the Essex ZBA's decision to uphold the approval of a permit which allowed the defendant landowners the right to construct a third story on their legally nonconforming home, without increasing the existing structure's footprint. The proposed third story would overhang the foundation but would not extend beyond the deck. The Doyen plaintiffs argued, in part, that the existing regulations did not permit the expansion into the airspace above a legally existing nonconformity. On review of the specifically applicable local provisions, the court found that regulation § 40I.1 to be authoritative in that instance.[12]
Construing § 40I.1 in the context of the remainder of the Essex regulations,[13] the court found that "[t]he requirement that setbacks `shall be open and unobstructed to the sky' essentially adds a vertical component to the setback regulation."[14] Based on these precisely formulated provisions of the Essex zoning regulations, the court found that the proposed construction violated the setback scheme by allowing encroachment into previously unimpeded airspace. For this reason, the court concluded that the Essex ZBA had improperly approved the construction plan at issue. CT Page 8181
It is true that insofar as prior existing property uses are concerned, Connecticut adheres to the "general principle in zoning that nonconforming uses should be abolished or reduced to conformity as quickly as the fair interest of the parties will permit. In no case should they be allowed to increase." (Internal quotation marks omitted.)Connecticut Resource Recovery Authority v. Planning Zoning Commission,225 Conn. 731, 740, 626 A.2d 705 (1993). Although the Settipane, Gians
and Doyen cases each ratify the general policy supporting zoning regulations in this state, only Doyen was decided after consideration of identified local zoning ordinances which were interpreted as specifically affecting vertical setback requirements. Despite the vigor of the plaintiffs assertions, the record reflects no such applicable provisions for the town of Clinton.
The plaintiffs tendered trial court opinions therefore provide limited guidance in the present case. A close review of the Settipane and Gians
discloses only summary attention to zoning regulations in Old Saybrook and Westbrook, without express discussion of the manner in which general provisions could or should be construed as establish vertical setback requirements. Doyen does expressly identify such a rationale for its conclusion, which is clearly based upon the application of Essex Zoning Reg. 40I.1, requiring setbacks to "be open and obstructed to the sky," as noted above. No regulations have been shown to exist in Clinton which would establish like succor for the plaintiff in this matter. Also, the zoning regulations at issue in Settipane and Doyen established the towns' clear intentions that nonconformities should be quickly reduced to conformity. Although the regulations at issue in Gians did not explicitly state the policy of the town with respect to nonconformities, the relevant zoning regulation prohibited the extension or enlargement of a nonconforming use if the enlargement of the building was required. However, in this matter, Clinton's zoning regulations have not been shown to state a similar general policy with respect to nonconforming uses, their quick reduction to conformity, or a similar blanket prohibition against the expansion or enlargement of nonconformities. The plaintiff has failed to provide a sufficient basis for the court's inference that such policy was intended by the town of Clinton, or addressed through other regulations. To the contrary, any reasonable construction of Clinton's § 13.1.1 compels the inference that Clinton anticipated and invited extensions of nonconforming structures, through its express approval in the concluding sentence of that regulation: "A non-conforming building or structure may be expanded or enlarged if that expansion or enlargement is in conformity with all applicable requirements of these Regulations."
In support of their position, the Reu defendants cite Jachym v.CT Page 8182Planning Zoning Commission, Superior Court, judicial district of New London at New London, Docket No. 522367 (December 16, 1992, Hurley, J). Unlike Settipane, Gians and Doyen, the Jachym opinion addresses circumstances in Stonington that are closely analogous to the present case, and thereby promotes reasoning that is most persuasive. In Jachym, the applicants sought to construct a second-story addition to an existing garage that legally did not conform to Stonington's setback requirements. The addition as proposed would not extend beyond the footprint of the existing garage. The plaintiffs, abutting landowners, appealed from the planning and zoning commission's (PZC) decision to approve the proposed site plan. In Jachym, the zoning regulation at issue permitted the expansion of a nonconforming structure "provided that no new nonconformity or increased encroachment results. . . ."[15] (Internal quotation marks omitted.) Jachym v. Planning Zoning Commission, supra, Docket No. 522367. Analyzing this language, the Jachym court determined that Stonington's zoning regulations specifically permitted alterations of nonconforming structures without requiring the elimination of the nonconformity. Furthermore, the court found that by allowing the addition to proceed, the PZC did not violate the public policy supporting the setback requirements in general.
In finding that the PZC acted properly, the Jachym court rejected an argument identical to the one made by the plaintiff in the present case, urging that Stonington's zoning regulations should be interpreted as prohibiting encroachment into the air space surrounding all dimensions of a nonconforming use. In rejecting this proposition, the court reasoned as follows: "The PZC approved the addition to the garage. Implicit in this finding is that a vertical addition does not increase a horizontalencroachment into the yard. In the absence of contrary Connecticut law on point with this issue, the court finds that the PZC's finding was a reasonable interpretation of its own regulations and was supported by the record. . . . [T]he zoning regulations specifically allow some alterations of nonconforming structures without requiring the elimination of the nonconformity."[16] (Emphasis added.) Jachym v. Planning Zoning Commission, supra, Docket No. 522367.
Similar to those at issue in Jachym, Clinton's pertinent regulations clearly provide for the expansion of the nonconformity, provided that the expansion conforms to the zoning regulations. Clinton Zoning Regs. § 13.1.1.[17] The court is obligated to consider the regulation in its entirety, without forcing or contorting its clearly expressed effect. "The regulation is a local legislative enactment, and in its interpretation [the court seeks] to discern the intent of the legislative body as manifested in the words of the regulation. . . . Since zoning regulations are in derogation of common law property rights, however, the regulation cannot be construed beyond the fair import of its language to CT Page 8183 include or exclude by implication that which is not clearly within its express terms. . . . The words employed by the local legislative body are to be interpreted in accordance with their natural and usual meaning . . . and any interpretation that would torture the ordinary meaning of the words to create ambiguity will be rejected. . . . Common sense must be used in construing the regulation, and we assume that a rational and reasonable result was intended by the local legislative body." (Citations omitted.) Spero v. Zoning Board of Appeals, supra, 217 Conn. 441.
Using this test, the first sentence of § 13.1.1, which provides that no non-conforming structure shall be enlarged in any way that includes "any land, building or other structure, or portion thereof, which is not subject to such non-conformity," must be read in the light of the remainder of the regulation, which specifically provides that "[a]ny non-conforming use of a building or other structure, or portion thereof, however, may be extended to include any portion of the building or structure manifestly designed for such use." A fair interpretation of § 13.1.1 thus expressly anticipates the permissive expansion or enlargement of a non-conforming structure in Clinton "if that expansion or enlargement is in conformity with all applicable requirements of these Regulations." Clinton Zoning Regs. § 13.1.1 Any other reading would defeat the common sense approach that must be used in construing the regulation. Spero v. Zoning Board of Appeals, supra, 217 Conn. 441. As the Reu defendants have suggested, if the first sentence of § 13.1.1 is interpreted as a blanket prohibition against the enlargement of nonconforming structures, then the last sentence of the regulations permitting expansion under certain circumstances is superfluous. The court cannot reasonably permit such a result. Id.
The reality of this matter is that the Reu defendants propose an addition to property located in Clinton, not in Essex where abutting "airspace" is specifically protected. The record compels the conclusion that, unlike the regulations applicable in Essex,[18] the Clinton zoning regulations do not explicitly safeguard vertical setbacks insofar as additions to existing structures are concerned. As in Stonington,[19]
on prior occasions, Clinton's ZEO and the SBA had interpreted the town's regulations as permitting the vertical expansion of a nonconforming structure provided that the footprint was not thereby increased. (ROR, Exhibit 17, Testimony of Thomas Lane, pp. 11, 12; Testimony of Matthew Williams, pp. 31-32.) The interpretation of the regulations by the zoning board of appeals is entitled to some deference. Roy v. Centennial Ins.Co., 171 Conn. 463, 473, 370 A.2d 1011 (1976); Northeast Parking v.Planning Zoning Commission, supra, 47 Conn. App. 293. "Conclusions reached by [a local board] must be upheld by the trial court if they are reasonably supported by the record. . . . The question is not whether the trial court would have reached the same conclusion but whether the record CT Page 8184 before the agency supports the decision reached." Primerica v. Planning Zoning Commission, 211 Conn. 85, 96, 558 A.2d 646 (1989), cited in Jachymv. Planning Zoning Commission, supra, Docket No. 522367. "The record also shows that the defendant has consistently interpreted the regulations in this manner. . . . While this fact is not dispositive of the issue at hand, it supports the conclusion that the [ZEO's] decision was not arbitrary. At the very least, the past practice of the ZBA demonstrates that its actions were not arbitrary in denying the plaintiffs' appeal." Id.
The court finds that ZBA's decision was not illegal, arbitrary or an abuse of its discretion. The decision was reasonably supported by the record, and effectuates the zoning regulations applicable to the town of Clinton. Accordingly, the court will not sustain the appeal on this first basis raised by the plaintiff.
 III. DEFICIENCIES IN THE APPLICATION
The plaintiff also has brought this appeal on the ground that the zoning permit application was defective in two ways. First, the plaintiff argues that the plot plan submitted as part of the application, pursuant to § 3.1.1 of the Clinton zoning regulations, omitted required information concerning sanitation services for the addition. The plaintiff also argues that the expansion proposed by the application would violate the Connecticut Public Health Code, Section 19-13-B-100a of the Regulations of Connecticut State Agencies. In response, the ZBA argues that it is not the province of the ZEO to enforce the public health code and that even if the certificate of zoning compliance had been issued, the Reu defendants would not be permitted to start construction without approval from the director of health. The Reu defendants argue that the ZEO and the ZBA had all of the information it required in order to properly issue the permit. The court finds this issue in favor of the defendants.
Section 3.1.1 of the Clinton zoning regulations provides in pertinent part: "A Plot Plan must be submitted in duplicate, drawn to scale, showing the following, both existing and proposed. . . . (c) the location of any existing or proposed on-site sewage disposal system, leaching field expansion area and water supply well." Under certain circumstances, Connecticut's public health code requires that the local director of health determine the viability of a proposed subsurface sewage disposal system.[20] Regs., Conn. State Agencies § 19-13-B100a.
The plot plan submitted with the zoning application did not indicate the location of either the existing septic system or the proposed septic system. (ROR, Exhibit 1, Plot Plan.) The record supports the finding, CT Page 8185 however, that the town sanitarian had sufficient information to approve the application, notwithstanding this omission. (ROR, Exhibit 1, Application; ROR, Exhibit 17, Testimony of Thomas Lang, p. 12.) The record supports a finding that the construction, as proposed did not result in a net increase in the number of existing bedrooms at 78A Waterside Lane, and serves as an implicit basis for the project's approval by Clinton's town sanitarian. (ROR, Exhibit 1, Application; Exhibit 17, Testimony of Architect Matthew Williams, pp. 31-32.) Moreover, the ZBA received testimony to the effect that the town sanitarian held discussions with the project architect regarding the viability of the septic system, leaching fields and soil consistency. (ROR, Exhibit 17, Testimony of Architect Matthew Williams, pp. 33-34.)
Furthermore, with respect to § 19-13-B100a of the Regulations of Connecticut State Agencies, the plaintiff acknowledges "that the ZEO is not empowered to enforce the Public Health Code." (Plaintiffs Memorandum of Argument, p. 8.) The ZEO, therefore, could not make a determination that the proposal violated the public health code without exceeding his authority. See R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (2d Ed. 1999) §§ 12.7 and 12.5 (discussing the differing enforcement authorities of the municipal health director, or sanitarian, and the zoning enforcement officer.) Thus, although the Reu defendants would not be permitted to start construction without approval from the director of health, there is no deficiency in the application, related to sanitary matters, which would preclude the ZEO's issuance of the permit, nor the ZBA's ratification of his actions by denial of the plaintiffs appeal.
The plaintiff has failed to meet his burden of proving that any deficiencies in the application for construction at 78 Waterside Lane were of such nature or effect as to render its approval an improper act. Accordingly, the plaintiff cannot prevail on this issue.
 IV. CONCLUSION
Based on the foregoing portions of the record and applicable principles of law, the court finds that the ZBA's decision in denying the plaintiffs appeal did not constitute an illegal or arbitrary act, nor was it an abuse of its discretion. The court further finds that the decision of the ZBA is supported by substantial evidence from the record. For all the reasons stated above, the plaintiffs appeal from the decision of the Clinton zoning board of appeal is hereby DISMISSED.
BY THE COURT,
Rubinow, J. CT Page 8186